**Raymond HILL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15449.**

United States Court of Appeals
Ninth Circuit.

Nov. 3, 1958.

Rehearing Denied Dec. 15, 1958.

484

George T. Davis, San Francisco, Cal., for appellant.

Robert Schnacke, U. S. Atty., John H. Riordan, Jr., Richard H. Foster, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before FEE, CHAMBERS and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

The appellant was charged in count one of an indictment with concealing and facilitating the concealment and transportation of marihuana without paying the transfer tax, in violation of Section 4744, Title 26 of the United States Code;[1] count two with transferring marihuana not in pursuance of a written order from the transferee, in violation of Sections 4742[2] and 7237[3] of Title 26, United States Code.

After trial by jury, appellant was found guilty on both counts. Following the denial of a motion for new trial, appellant was sentenced to a term of two years on count one, and to five years on count two, the terms of imprisonment to run concurrently.

Appellant does not question the sufficiency of the evidence to sustain his conviction under count one.

The specifications of error relied upon by appellant are:

1. The evidence is insufficient to support the verdict of guilty on count two;

2. Under the facts and circumstances of the case the appellant was not accorded a fair trial;

3. The application of Title 26, United States Code, Sections 4742 and 7237, in such a manner as to make mandatory a minimum sentence of five years without the privilege of applying for probation is violative of the appellant's right to due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

In order to properly consider some of the specifications of error, it is necessary to summarize the testimony which was before the jury for consideration.

The investigation leading to the arrest of the appellant occurred during May and June of 1956. Appellant was working as a bartender in a cocktail lounge and bar in San Francisco. A waitress working in the bar introduced appellant to the Federal Narcotics Agent Ira Charles Feldman, who was conducting undercover investigation of persons other than the appellant. The agent used the name of Joe Capone, claiming he was a relative of Al Capone, and said he was interested in purchasing the establishment in which the appellant was working. The subject was discussed with the appellant on at least two occasions in the bar.

In July of 1956, appellant had changed jobs and was working at a downtown

1. 26 U.S.C. § 4744. "(a) Persons in general.—It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a) —(1) to acquire or otherwise obtain any marihuana without having paid such tax, or (2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained. Proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection and of liability for the tax imposed by section 4741(a)."

2. "§ 4742. Order forms "(a) General requirement.—It shall be unlawful for any person, * * * to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate."

3. "§ 7237. Violation of laws relating to narcotic drugs and to marihuana. * * * "(b) Sale or other transfer without written order.—Whoever commits an offense, or conspires to commit an offense, described in * * * section 4742(a) shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000 * * * * * * * * * "(d) No suspension of sentence; no probation; etc.— "Upon conviction— "(1) of any offense the penalty for which is provided in subsection (b) of this section * * * the imposition or execution of sentence shall not be suspended, probation shall not be granted * * * As amended July 18, 1956, c. 629, Title I, § 103, 70 Stat. 568."

hotel as a bartender. Without design, appellant and Feldman met on the street. Appellant mentioned that he was interested in purchasing the Jai-Alai Bar, and asked Feldman if he knew anything about it. Feldman stated that he did not, except that he had read something about the owner, Albert Urea, having been arrested on a narcotic violation. Feldman testified that appellant replied, " 'Yes,' he says, 'Albert really dealt in narcotics.' He says, 'He's still got a lot of it.' He says, 'His bar is for sale, too.' " Feldman replied that he was not particularly interested in narcotics, but that he had a friend who might be. The appellant said, "Well, he is going to work now, he said, 'Drop around to the St. Francis Hotel, bring your friend along, and perhaps we can do something.' "

Appellant admitted the meeting with Feldman, but denied that anything was said at that time about narcotics. He testified that the conversation had only to do with the purchase of Jai-Alai and the possibility of his running it for Feldman.

Feldman testified that on July 20, 1956, while appellant was on duty as a bartender, Feldman introduced John N. Stenhouse as "Max", who in fact was another Federal Narcotics Agent. "Max" was introduced as a prospective partner in the bar business. Feldman and Stenhouse both testified that they asked appellant how much marihuana he could get, and that appellant replied he could get from 100 to 200 pounds from the owner of the Jai-Alai, Albert Urea. They further testified that appellant told them that Urea needed money badly in order to obtain bail for the release of one Elia Torres, who was arrested with Urea and who had threatened to tell the court that the "stuff" belonged to Urea unless Torres was released on bail. Feldman stated to appellant that he was interested in the marihuana, and that Stenhouse might be interested in the purchase of the bar. Arrangements were made for a later meeting, and on July 23rd the same agents met appellant for lunch.

Appellant testified to a different set of facts which led up to the luncheon meeting. He testified that there were several meetings with Feldman before the one of July 20th, and that during such meetings Feldman continued to "build him up" as a prospective business partner, and that during this time appellant met "Steve", another prospective business partner, who in fact turned out to be another Federal Narcotics Agent named Nadler. Nadler was not called as a witness in the trial by either side. Appellant further testified that during this "build up" period the Narcotics Agent requested appellant to secure about 20 pounds of marihuana from Urea for "Steve" to take with him to Alaska, where it was claimed he owned a nightclub. Appellant stated he refused to contact Urea at first, but that the agents insisted, suggesting that if they wanted him as a partner he could at least do a small favor for them.

Feldman testified that he requested the appellant to secure the marihuana for "Steve", but this was during the early part of August or towards September, after the purchase of marihuana had been made from the appellant.

The facts following the luncheon are not in great dispute. After the luncheon appellant agreed to obtain some marihuana for Feldman and Stenhouse, and received $180 of government money from Stenhouse. Appellant contacted Urea and arranged for the marihuana to be left under a stairway in an alley near the Jai-Alai. Appellant took Stenhouse to the alley and showed him where it would be when ready. The next day appellant called Feldman on the telephone and told him to tell "Max" (Stenhouse) that he could go and get it. Stenhouse went to the place designated and picked up one pound thirteen and two-thirds ounces of marihuana.

Feldman testified that on the following day he contacted appellant and stated that he was not satisfied with what he had gotten, and that appellant offered to get more from another source at a cheaper price. He further testified that

the negotiations continued until September 8th, when appellant was arrested in Feldman's apartment.

We will first consider appellant's specification of error, that the evidence was insufficient to sustain a conviction on count two. Appellant concedes the sufficiency of the evidence to sustain a conviction on count one, but claims that the evidence was insufficient on count two, on the sole ground there was no notice and demand served on appellant to produce the order form required by Section 4742. No such demand is made an essential element of the crime.[4] To sustain a conviction under Section 4742, it is only necessary to show (1) a transfer of marihuana by the defendant (2) to any person not pursuant to a written order of the person to whom such marihuana was transferred.

In connection with count one of the indictment, the Internal Revenue Code provides that failure to produce the order form is presumptive evidence of guilt. Section 4742, however, under which count two is charged, has no analogous provision.

Appellant does not contend the marihuana was not transferred, nor that it was transferred pursuant to a written order, nor does he claim the transfer was authorized under any of the exceptions contained in subsection (b) of Section 4742. His contention merely is that the government failed to prove its case by failing to introduce evidence of a demand upon appellant for the order form.

Since such a demand is not an essential element of the offense charged, appellant's contention is without merit. There was sufficient evidence before the jury to sustain its verdict of guilty on count two.

With respect to appellant's second specification of error, that under the facts and circumstances of this case he was not accorded a fair trial, there are three points urged: First, that because of the alleged ineptness of appellant's counsel, he was not accorded the defense of entrapment; second, that the record presented establishes that appellant was "entrapped" as a matter of law; and, third, that testimony was received which prejudiced the defendant and prevented him from having a fair trial.

We will first consider the appellant's contention that he was not accorded the defense of entrapment. The record supplied by the appellant does not include the arguments presented to the jury by defendant's counsel, who is not the counsel representing the appellant on this appeal, nor does the record include the instructions to the jury which were proposed by the appellant, or which were given by the trial court, nor does the record show what transpired at the conference on instructions required by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. It is, therefore, impossible for us to tell from the record whether or not the defense of entrapment was in fact covered by argument and instructions.

It is elementary that an appellant seeking a reversal of an order entered by a trial court must furnish to the appellant court a sufficient record which positively shows the alleged error. We must assume that the instructions given by the trial court were proper in the absence of any record to the contrary. Parente v. United States, 9 Cir., 249 F.2d 752. See also United States v. Vanegas, 9 Cir., 216 F.2d 657; Balestreri v. United States, 9 Cir., 224 F.2d 915. Before leaving this point, however, we might observe that from an examination of the transcript as a whole, it appears from the cross examination of the government witnesses and from the testimony of the appellant himself that entrapment was the defense urged to the jury.

Appellant urges that the trial court should have found as a matter of

---

4. Cratty v. United States, 1947, 82 U.S. App.D.C. 236, 163 F.2d 844, interpreting Section 2591(a) Title 26 U.S.C., now Section 4742(a) Title 26, violation of which was charged in count two.

law that the appellant had been entrapped, and should have directed a verdict of not guilty. This point is based upon the contention that the Federal Agents, acting under false names and identities, practiced fraud and deceit on the appellant, worked on appellant two months as a prospective partner in order to get evidence on a known narcotics peddler; they focused on appellant as a narcotics peddler without any evidence that the appellant knew anything about the subject; and they furnished him money with which to purchase marihuana.

Other evidence in the record, however, is that it was the appellant who first mentioned narcotics to the Federal Agents; that appellant informed them that he had at least three sources of supply and could deal in 100 to 200 pound lots; that appellant volunteered to the Federal Agents the information that a bar was for sale and that the owner thereof still had narcotics for sale; and it was the appellant who invited the Federal Agent to come to appellant's place of employment to discuss the possibilities of further narcotic traffic; and it was the appellant who arranged for the purchase of the narcotics. The record before us does not show, as a matter of law, that appellant would not have committed the offenses for which he was found guilty except for the trickery, persuasion or fraud of the government agents. The Supreme Court, in Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413, 86 A.L.R. 249, stated:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises * * * The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law."

There was presented to the jury a question of fact turning on the credibility of witnesses. Clearly under the record, entrapment was not the only conclusion which the jury might reasonably reach. Louie Hung v. United States, 9 Cir., 111 F.2d 325; Woo Wai v. United States, 9 Cir., 223 F. 412; Stein v. United States, 9 Cir., 166 F.2d 851.

Appellant contends that because of the ineptness of the appellant's counsel in the trial of the case certain testimony was given by witnesses for appellee, and that certain questions were asked appellant on cross examination, which resulted in his failure to receive a fair trial. No objections were made to the receipt of such testimony during the trial of the action, as contemplated by Rule 51 of the Federal Rules of Criminal Procedure, and the point is raised here for the first time.

■ The only evidence now complained of relates to the testimony of Agents Stenhouse and Feldman, and the appellant's own response to a question on cross examination. Agent Feldman was asked by appellant's counsel the following question: "Now was it your intention to get as much information from Mr. Hill as you could regarding the narcotics traffic in this area or in the state? A. Yes, sir, it was, because the way Mr. Hill had spoken, he evidently possessed a great deal of knowledge of narcotics actions and people in the business, and we were very much interested in getting all we could out of him." Appellant's counsel made no motion to have any part of the answer stricken from the record, nor did he request the court to instruct the jury to disregard any part of such answer. Clearly, part of the answer was responsive to the question. The error, if any, in view of the whole record, is harmless and inconsequential.

■ Appellant complains that in response to a question directed to Mr.

Feldman as to the extent of a conversation between him and the defendant, Feldman stated, "Shortly thereafter we left having made arrangements to again meet the following Monday, as I recall, for lunch at which time we would discuss the trafficking of marijuana in large quantities in more detail." It is clear that Feldman and the appellant had discussed the trafficking in marihuana and the portion of the answer complained of by appellant was admissible as an admission by appellant, and was part of the conversation that he had with the appellant.

■ The third item of evidence of which the appellant complains related to cross examination of the appellant. He was asked: "Well, you discussed the price with Mr. Capone, you brought the girl up and you said you wanted to turn her out for a hundred a night?" "No, I never mentioned anything. They were the ones that were doing all that price and asking questions, and so, with the girl." The record shows that the testimony concerning the young lady was initiated by appellant, who was apparently trying to imply that Mr. Feldman was improperly involved with a prostitute, evidently for the purpose of shaking Feldman's standing and credibility before the jury. Under the record in this case, no error is apparent.

■ Rule 51 of the Federal Rules of Criminal Procedure obviates the necessity for taking formal exception to matters occurring during the course of a trial. However, it retains the requirement that in some way alleged error must be brought to the attention of the trial court. An appellate court will not consider matters which are alleged as error for the first time on appeal, except where the evidence complained of, in light of all the facts, so improperly prejudiced appellant in the eyes of the jury as to deny him a fair trial. There is no basis in the record before us for the application of Rule 52(b) of the Federal Rules of Criminal Procedure.

■ Appellant's final specification of error is that under the circumstances of this case the application of Title 26 U.S.C., Sections 4742 and 7237, is violative of appellant's right of due process of law as guaranteed under the Fourteenth Amendment.

Appellant argues that the Act under which he was convicted,[5] the Narcotic Control Act of 1956, 70 Stat. 567, 21 U.S.C.A. § 174, with its heavy penalties, no suspension of sentence and no probation, was not intended to be used as a punitive weapon to strike down possessors. As a matter of legislative history, however, the Act was designed to catch "illicit drug traffickers whether he be a first offender or an offender with previous convictions." U.S.Code Congressional & Administrative News 1956, pages 3274, 3285.

Furthermore, the evidence does not show the appellant was only "a mere possessor". Appellant makes no complaint of his conviction on count one, which charged appellant with concealing and facilitating the concealment and transportation of marihuana.

There is no merit to appellant's contention that he has been subjected to two penalties for a single offense. The rule is stated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306, wherein the following language appears, "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." See also Levin v. United States, 9 Cir., 5 F.2d 598; King v. United States, 9 Cir., 31 F.2d 17, affirmed 280 U.S. 521, 50 S.Ct. 65, 74 L.Ed. 590; Ross v. United States, 9 Cir. 103 F.2d 600; United Cigar

---

5. Appellant refers to his conviction under the Boggs Act as amended on July 18, 1956. We assume that appellant meant the Narcotic Control Act of 1956, which was a major revision in the law, and the successor of the Boggs Act.

Whelan Stores Corp. v. United States, 9 Cir., 113 F.2d 340.

In this case conviction of the appellant for concealing and facilitating the concealment and transportation of marihuana without paying the transfer tax under count one does not require proof of the same facts as transferring marihuana without a written order of the transferee under count two. In this case the same penal statute was not used in both counts of the indictment.

No constitutional rights of the defendant were violated by his conviction on count two.

The judgment is affirmed.