**Donald W. FORMHALS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16478.**

United States Court of Appeals
Ninth Circuit.

May 4, 1960.

**44**

Anderson, Adams & Bacon, Robert Louis Bacon, Rosemead, Cal., Thomas E. Kellett, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, William Bryan Osborne, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and HAMLIN, Circuit Judges.

BARNES, Circuit Judge.

Appellant was convicted by a jury on three counts of an indictment charging him with violation of Title 18 U.S.C. § 1709.[1] He was sentenced to six months imprisonment on each count, the sentences running concurrently. Timely appeal was taken. Fed.R.Crim.P. 37(a) 18 U.S.C.

Six specifications of error are alleged. The last five have to do with the conduct of the trial. We shall consider these in turn, and then return to the first alleged error.

■ II—Failure to give an instruction that the jury should totally disregard evidence offered by the government, but ruled inadmissible by the trial judge.

We first note that no request was made by appellant for such an instruction. In the absence of "plain error," this prevents our considering the matter on appeal. Fed.R.Crim.P. 52(b). Hill v. United States, 9 Cir., 1958, 261 F.2d 483, 489. The document (Government's Exhibit 4) was never introduced in evidence. The court properly and firmly excluded it when the government offered it.

It is true the government referred to it in the jury's presence as an "admission". No reference was made as to what the document purportedly admitted. When the government asked that further argument be had at the bench, out of the presence of the jury, the court immediately granted the request.

■ Furthermore, the mere characterization by government counsel of the "statement of charges" as an admission because of appellant's failure to deny them could hardly be prejudicial error in view of the circumstance that there was already in evidence Government Exhibit No. 1, a full and complete confes-

---

1. 18 U.S.C. § 1709 reads in material part as follows:

"Whoever, being a * * * Postal Service employee, embezzles any letter * * * intrusted to him or which comes into his possession intended to be conveyed by mail * * * shall be fined * * * or imprisoned not more than five years, or both."

sion. This had been signed by the appellant twice, and at the bottom of it, over his signature, he had written, "I have read my statement of two pages and I say everything herein is the truth."[2]

2. Exhibit 1 reads as follows:
   "I, Donald W. Formhals, first being duly sworn, make the following statements.

   "I know my constitutional rights and the fact that I do not have to make any statement. I am making this statement because I want to and know that I should give all the facts. No promises, threats or inducements of any kind have been made to me for this statement.

   "I am a regular, annual rate postal clerk in the Hemet, California Post Office. I have about five years continuous service. I am 33 years old, born December 11, 1924 at Lewis, Iowa. I now live with my wife and two step children at 1346 E. Mayberry Ave., Hemet, California. I am a veteran of the military services, having served about 4 years in the U. S. Marines, about one year in the U. S. Army, and about 5 years in the U. S. Air Force.

   "Today, June 25, 1958, I commenced my duties in the Hemet Post Office at 7:45 am; left for lunch at 10:30 am, and returned at 12:31 pm. At about 2:45 pm today I commenced distributing outgoing first class letters for dispatch. Between 2:45 pm and 4:30 pm today, while distributing the first class letters, I removed six outgoing letters from the mails and placed them inside my pants pocket. All the letters are addressed to charitable organizations in different parts of the country and obviously contained money. These letters were converted to my person at various moments between 2:45 pm and 4:30 pm today as I noticed them in the mails I was distributing.

   "At about 4:30 pm today I went to the men's rest room at the rear of the post office and sat down on the commode. I tore open one of the letters and removed two 1$ bills from that envelope. I tore the envelope into small pieces and placed it in the commode below me. This letter was addressed to Foreign Missions Fund, P.O. Box 3314, Terminal Annex, Los Angeles 54, Calif. and bore a postmark of Hemet, Calif., 5 pm, June 25, 1958. It also bore a return address of Thomas Mansholt, 2794 Denton, Riverside, Calif. Postal Inspectors Dow and Lynch approached me while I was sitting on the commode and I removed the torn pieces of the envelope from the commode and the two 1$ bills from my shirt pocket.

We find no prejudicial or plain error.

III—Error is charged in limiting the cross-examination of the prosecution's witness Norman H. Wilson.

The pieces of the torn envelope have been clipped together and I have placed my name and this date on the top piece as Identification. I have also placed my name and date on the two 1$ bills.

"At the time I was approached while I was on the commode by the postal inspectors, the other five letters were resting on my bare leg inside my pants. I would have opened those five letters and removed the contents in the same manner as the one I had opened. I have written my name and today's date on all of the five letters as well as the statement that I took the letter from the mails and put it inside my pants from which place it for (sic) postal inspectors in the post office toilet room on this date of June 25, 1958.

"I estimate that I have been removing first class letters from the mails and converting them to my personal use for the past six months. All such letters were removed from the mails by me while I was employed in the distribution of outgoing letter mail. I usually took letters I thought would contain money. I estimate that I have derived about $50 from my thefts of letters. There have been instances when I resealed and sent on to the addressees letters which contained checks and money orders; also letters containing cash were a specific piece of merchandise was ordered by the sender. In other words, only cash contents of letters were kept by me and in those instances where I thought there would be no trace of the mailings. I usually followed the same operation of removing the letters from the mails and opening those letters as I did today.

"I have read this statement consisting of pages No. 1 and No. 2 and I say that all statements herein are true.

"[and in appellant's handwriting] I have read my statement of two pages and I say that everything herein is the truth.

"[signed] Donald W. Formhals

"Donald W. Formhals

"Sworn and subscribed to before us at Hemet, California on this 25th day of June, 1958.

"W. W. Lynch

"Postal Inspector

"C. W. Dow

"Postal Inspector"

The answer is that the court did not limit the cross-examination of this witness in any way with respect to any matter brought out on direct examination. Of course, if defendant desired to call this witness as his own, to develop some new matter or theory of defense, he had that right as part of his own case. And such right was not interfered with nor restricted by the court.

■ IV—Error is charged in the alleged failure of the trial court to instruct the jury that the appellant's testimony is to be judged in the same way as that of any other witness.

It is difficult to follow appellant's position in this alleged error. At the conclusion of the instructions, government counsel, not appellant's counsel, objected to the instructions on the ground that the court had not instructed that "the defendant's testimony is to be judged in the same way as that of any other witness." Counsel for appellant, when asked if he had any objections to the instructions given replied "No objections at all, your Honor." He also said he thought the court had given the instruction which the government then requested.

Appellant's counsel was right at the trial. The trial court had given the substance of such an instruction in his main charge. We must keep in mind that the appellant had taken the stand to testify as a witness in his own behalf. The jury was instructed as to the credibility of any and all witnesses "who have testified in the case."

Even were we to assume the point has not been waived (Fed.R.Crim.P. 30), there was no error. Pine v. United States, 5 Cir., 1943, 135 F.2d 353, 355–356, certiorari denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439.

■ V—It is even more difficult for this Court to understand appellant's reliance on the fifth alleged error—that the record is bare of any evidence that the letters appellant is charged with embezzling had been placed in the United States mail.

Government Exhibits 2-A, 2-B, 2-C, 2-D and 2-E were in evidence. Each were envelopes bearing cancelled United States postage stamps and cancellation marks of Hemet, California post office, each bearing the date "June 25, 1958" within the familiar circle, as well as the hour of mailing. The first four bore "5 PM" markings; Exhibit 2-E a "3 PM" marking. Each of the envelopes bore on its reverse side the following handwritten legend (emphasis added):

"I took this letter *from the mails* and put it inside my pants, from which place I removed it for postal inspectors in the post office toilet room this date.
"June 25, 1958
"[signed] Donald M. Formhals"

Exhibit 2-F, the yellow torn envelope addressed to the Foreign Missions Fund, likewise shows clearly a United States mail cancellation on its fragments.

In addition to the foregoing evidence, we have Government Exhibit 1, the confession.[3] Additionally, we have Mr. Formhals' testimony at the trial that he was working at the post office, sorting *mail*, that he took a handful of *mail* into the men's room. Again, Mr. Wilson, the Hemet Postmaster, testified he had specifically assigned appellant to dispatching *the mail*. Further, Exhibits 2-A and 2-F were "test letters" and had been deposited at 3:30 P.M. on June 25, 1958 in the lobby-drop of the Hemet Post Office, and at 3:40 P.M. in the outside courtesy box in front of the Hemet Post Office, respectively, by Post Office Inspector Lynch. Far from there being no evidence that the letters were taken from the United States mail, such fact is overwhelmingly and conclusively established.

■ VI—Alleged error VI is that the court permitted Post Office Inspector Lynch to testify with regard to cancellation time differences on the letters in

3. See n. 2, supra.

evidence. What qualification is necessary to make a witness an expert is largely a matter for the discretion of the trial court. E. g. Standard Oil Company of California v. Moore, 9 Cir., 1958, 251 F.2d 188, 221. Surely, no abuse of discretion existed here.

■ This brings us to the first error charged, and the only one herein urged of any consequence—namely that there was never any judicial determination of the competency of the accused, pursuant to 18 U.S.C. § 4244.[4] The government takes the position, inasmuch as the court appointed physician and psychiatrist found the appellant was "able to presently defend himself and assist his counsel in the preparation and presentation of his defense * * *," that appellant had no right to a hearing or a judicial determination of his present competency to stand trial. Appellant relies solely on Gunther v. United States, 1954, 94 U.S. App.D.C. 243, 215 F.2d 493, and Watson v. United States, 1956, 98 U.S.App.D.C. 221, 234 F.2d 42, 44 (both from the Court of Appeals of the District of Columbia), and insists a hearing and a judicial finding are necessary.

Watson v. United States, supra, so states.[5] It relies on a statute which so states, Pub.Law 313, Chapter 673, 69 Stat. 609, amending D.C.Code § 24-301, 1951 Edition, and on the Gunther case, supra. But *only so far as applicable* does Watson rely on Gunther.

Public Law 313, Chapter 673, is applicable by its terms only to those persons arrested, indicted or charged by information in the District of Columbia. By subparagraph (h), it "supersede[s] in the District of Columbia the provisions of any Federal statutes * * * inconsistent with this section." Thus

4. Title 18 U.S.C. § 4244 reads as follows:
   "§ 4244. Mental incompetency after arrest and before trial

   "Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

5. The entire reference in Watson, including the pertinent footnote, is as follows:
   "[O]n a new trial there should be a determination of competency, to be noted of record, pursuant to statute.[2]
   * * * * *
   "2. See Pub.L. No. 313, Act of Aug. 9, 1955, 69 Stat. 609, D.C.Code, § 24-301 and, so far as applicable, 18 U.S.C. § 4244 (1952) Gunther v. United States, 1954, 94 U.S.App.D.C. 243, 215 F.2d 493. The file disclosed no order, merely a docket entry to indicate, the granting of a defense motion for mental ex-examination. Nor does there appear to have been a judicial determination of the competency of the accused to stand trial."
   234 F.2d at page 44.

**48**

when Gunther speaks of a statute, it refers to a different statute than that which is here controlling (18 U.S.C. § 4244).

Gunther, supra, relates to a defendant who had been charged with rape. After a not guilty plea, the United States Attorney moved for a judicial determination of his mental competency under 18 U.S.C. § 4244. Two psychiatrists found and reported he was of unsound mind, and after court hearings, the court found he was unable to understand "the nature of the charges against him, or properly to assist in his own defense." He was sent to a mental hospital. Later the hospital found he had recovered his reason and so notified the court. The court made no further inquiry, nor any independent determination of defendant's ability to stand trial. Gunther was tried and found guilty. He appealed upon the point "that, *after an accused has been judicially determined incompetent to stand trial*, he cannot be brought to trial unless there has been a subsequent judicial determination of restored competency." (Emphasis supplied.) The District of Columbia Court of Appeals agreed. We would also.

But those are not the facts here. Formhals was not declared incompetent by any court—to the contrary, he was found competent to defend himself—specifically by the court appointed psychiatrist, and inferentially at least, by the trial judge. Under such circumstances, 18 U.S.C. § 4244 does not specifically require a trial court's hearing or finding

of competency.[6] Everything Gunther has to say with respect to the congressional history of 18 U.S.C. § 4244 is related to the Gunther facts—a trial of a person once found incompetent without any judicial hearing or finding of his subsequent and then ability to stand trial, i. e., to adequately understand and properly defend his case. The statute's express language is that only "*If* the report of the psychiatrist indicates a state of \* \* \* mental incompetency \* \* \* the court shall hold a hearing \* \* \* and make a finding \* \* \*." (Emphasis added.) Were we to hold such a hearing and finding is required in every case, irrespective of the psychiatrist's report, then the issue of present insanity would necessarily be tried before the trial on its merits, despite the best medical reports on file that a condition of insanity or mental incompetency did not exist. We think the statute (18 U.S.C. § 4244) was cast in its existing form to avoid just such a useless burden.

We find nothing in 18 U.S.C. § 4244, with respect to the facts of this case, which required the court with knowledge of the psychiatrist's report to proceed with hearings and to make a finding before proceeding with Formhals' trial.

We find support for this position in Markham v. United States, 4 Cir., 1950, 184 F.2d 512. And see: Krupnick v. United States, 8 Cir., 1959, 264 F.2d 213, 216; United States v. Everett, D.C.D. Kan.1956, 146 F.Supp. 54.

Finding no error, we affirm.

---

**6.** We note that in Gunther the following statement appears:

"Clearly, the 'duty of the judge to be assured the man is *competent*' is not obviated by a previous finding that he is incompetent. While the judge may be assured of such a person's competency without a full-scale hearing,[9] the above-quoted colloquy makes clear that neither a doctor's certificate nor other 'medical testimony' was contemplated as a substitute for the essential 'finding of the court.'

\* \* \* \* \*

**"9.** Such a hearing is required by the statute *only when there has been a psychiatric finding of present incompetency.*" (Emphasis in footnote added.) 215 F.2d at page 496. We see no distinction in the statute between the necessity for a hearing, and a finding. If the court hearing is required *only after* a psychiatrist's finding of present incompetency, the court's finding is likewise dispensed with.