Thomas W. **WHALEM**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18067.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 7, 1964.

Decided April 23, 1965.

Bazelon, Chief Judge, Wright and Fahy, Circuit Judges, dissented.

Mr. Robert N. Kharasch (appointed by this court), Washington, D. C., for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Joel D. Blackwell and Max Frescoln, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge,* and FAHY, WASHINGTON, DANAHER, BASTIAN,† BURGER, WRIGHT and McGOWAN, Circuit Judges, sitting *en banc*.

BASTIAN, Senior Circuit Judge, with whom WILBUR K. MILLER, Senior Circuit Judge, and DANAHER, BURGER and McGOWAN, Circuit Judges, join:

When this case was first argued to a division of three judges, appellant, convicted of robbery and attempt to commit rape, questioned the sufficiency of the evidence of his indentification, the jury instructions which he alleges failed to properly emphasize evidence favorable to his case, and introduction into evidence of clothing taken from him after his arrest. Before an opinion was issued by the division the full Court *sua sponte* ordered a rehearing *en banc*. At the rehearing *en banc* two other issues were raised, namely (1) whether there was sufficient evidence in the record pertaining to appellant's lack of sanity to raise the issue of insanity even though appellant himself refused to do so, and whether in view of such evidence the trial judge erred by not raising the insanity issue *sua sponte* and instructing the jury thereon, despite appellant's wishes to the contrary; and (2) whether the trial judge erred in proceeding to trial without holding a hearing to determine appellant's competency to stand trial, which hearing, appellant now urges, was required notwithstanding his lack of objection to two hospital reports that he was competent.

We hold that appellant was adequately identified and that the instructions to the jury were fair in all respects.

---

* Sitting by authority of 28 U.S.C. § 46, as amended Nov. 13, 1963.

† Circuit Judge Bastian became Senior Circuit Judge on March 17, 1965.

The clothing was properly admitted into evidence since it was taken from appellant after a valid arrest. Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508, cert. denied, 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259 (1960).

Before turning to the remaining issues, we believe some background is necessary. At the time of the crimes in question appellant was on convalescent leave from St. Elizabeths Hospital, to which he had been civilly committed in 1956. After his arrest for the crimes in question, the Government, reciting appellant's prior commitment, successfully moved for a mental examination and appellant was committed to St. Elizabeths pursuant to D.C.Code § 24–301(a). The hospital superintendent subsequently informed the court that in his opinion appellant was "mentally competent to understand the nature of the charges pending against him and to assist properly in the preparation of his defense." The court was also informed by the superintendent that appellant was, both then (at the time of the report in March 1963) and at the time of the crime, suffering from a mental disease, diagnosed as schizophrenic reaction, catatonic type (in remission), but that the crimes were not products of this disease. Appellant's counsel then moved for a further mental examination and appellant was sent to D. C. General Hospital which reported that appellant was "mentally competent as to be able to understand the proceeding against him and to be able to properly assist in the preparation of his defense." In addition, the D. C. General report noted that although appellant manifested a passive aggressive character disorder and a low I. Q., his condition did not constitute a mental disease or defect. After receipt of these reports neither the Government nor the defense objected to the hospitals' certifications nor did they request a hearing. The case proceeded to trial without a hearing on the issue of appellant's competency. At trial no issue of insanity was raised by defense counsel, who was acting under instructions given him by appellant as well as counsel's own judgment that the issue of insanity should be left out of the case.

We deal first with the question of whether, in view of appellant's prior (1956) commitment to St. Elizabeths and the reports from that institution and D. C. General Hospital, the trial judge erred in proceeding to trial without holding a hearing on the issue of appellant's competency to stand trial. Appellant's argument here is essentially that his 1956 commitment created a presumption of continuing incompetency to stand trial, as well as insanity, and therefore an affirmative determination, based on a hearing, was required to establish the contrary, and further that in any event a District Court hearing is always required after a mental examination pursuant to D.C. Code § 24–301(a) even when the report is that the accused is competent and neither the accused nor the Government requests such a hearing.

The reports that came back from both hospitals to which appellant was referred for a mental examination were that appellant *was* competent—and it is right at this juncture that we get no explicit guidance from the statute. It is, therefore, without the help of an express prescription in § 301 as to the procedure to be followed at this point that we have to resolve the argument that, even though no objection of any kind was made to the reports and no request of any kind for a judicial inquiry was made, the trial court committed reversible error in letting the trial proceed without a judicial competency hearing.

Section 301(a) deals in terms with the procedure to be followed on the receipt by the court, after the granting of a motion for a mental examination, of the report of the hospital that the accused is *not* competent to stand trial. In such event, the statute states:

"[S]uch report shall be sufficient to authorize the court to commit by order the accused to a hospital for the mentally ill unless the accused or the Government objects, in which event, the court, after hearing without a

jury, shall make a judicial determination of the competency of the accused to stand trial."

Of course, Congress was there concerned with the establishment of a reasonable and proper basis for the detention by commitment of an accused who might be mentally ill.

Congress next had to provide a mechanism for steps yet to follow. It would have been more logical just as it certainly would have been more helpful if Congress had dealt specifically with the situation where, as here, following an order granting a mental examination, the hospital submits its report that the accused *is* competent to stand trial. Since the statute is completely silent on this point, we must deal with the situation in light of what Congress surely intended, as may be discerned from the very next paragraph following the one quoted above. This is § 301(b), which deals with the case where the accused, having once been committed to the hospital as incompetent to stand trial, is later found by the superintendent of the hospital to be *restored to competency*. In such event, the statute says:

> "[T]he superintendent shall certify such fact to the clerk of the court * * * and such certification shall be sufficient to authorize the court to enter an order thereon adjudicating him *to be competent to stand trial*, unless the accused or the Government objects, in which event, the court, after hearing without a jury, shall make a judicial determination of the competency of the accused to stand trial."

This was, of course, the statute Congress adopted for the explicit purpose of altering our holding in *Gunther*.[1]

■ As between § 301(a) and § 301(b), we cannot see any substantial differences in the language used to characterize the course which the court is authorized to follow upon the return of a certification of incompetency, in the one case, and restoration of competency, in the other. We read the present prescription as being very clear to the effect that, whenever the court receives a certification of incompetency or a certification of restoration of competency and there is no objection by either the accused or the Government, the court may, in the one case, forthwith commit the accused to a mental hospital and, in the other, immediately proceed with the trial.

By its unbalanced discussion of the alternatives in § 301(a) Congress could conceivably be thought to have attached more horrendous consequences to being committed to ·a mental hospital than it did to being certified to be competent to stand trial. Contrarily, it could be taken to have left out the one alternative on the implicit assumption that a person should not be forced to stand trial without a judicial inquiry going behind the hospital's certification of competence, even though no objection is made to the certificate and no such inquiry is sought. This latter interpretation is, however, pretty well destroyed by Congress' enactment of § 301(b).

■ Accordingly, we conclude that Congress intended that a certification of competency following a § 301(a) referral should be sufficient to authorize the court in its discretion to proceed with the trial *unless* the accused or the Government objects, in which case a hearing must be held to determine competency.[2] This is

---

1. Gunther v. United States, 94 U.S.App. D.C. 243, 215 F.2d 493 (1954).

2. A similar conclusion has been reached by other circuits in dealing with the problem of the procedure to be followed under 18 U.S.C. § 4244, which, like § 301(a), contains no express prescription for the court to follow when the

mental examination results in a certificate of competency. See *Coffman v. United States*, 290 F.2d 212 (10th Cir. 1961); *Formhals v. United States*, 278 F.2d 43 (9th Cir. 1960); *Krupnick v. United States*, 264 F.2d 213 (8th Cir. 1959); and see *Miller v. United States*, 207 F. Supp. 5 (D.C.N.D.Fla.1962).

the same procedure which Congress expressly established for use in handling certifications of either incompetency or restoration to competency, and we believe it to be equally applicable to the alternative presented in this case.[3]

■■ By arguing, in effect, that we should require a hearing on an accused's competency to stand trial in all cases, whether or not an objection to a competency certification has been made, appellant would have us do precisely what Congress has said we should not do. In enacting the 1955 amendments to § 301 Congress, as we read the statute, *specifically overruled* that much of the *Gunther* and *Contee* [4] cases which held that an accused could not be ordered to trial on the basis of the certification of the accused's competency to stand trial by the superintendent of the mental institution wherein the accused has been examined.[5] To adopt appellant's argument in this case would be to legislate judicially the reinstatement of *Gunther* in the teeth of Congress' clear mandate to the contrary.

■ In holding that a trial judge may proceed to trial on the basis of the hospital's certification of competency when no objection is made thereto, we neither say nor imply that he *must* do so merely because the hospital's report is not objected to by either of the parties. Unquestionably a trial judge is always free to pursue whatever inquiry into the question of an accused's competency he feels necessary. He *may* conclude that the hospital's report is inadequate and *sua sponte* request an elaboration of the report or order a hearing, and indeed, there may be cases in which, on the basis of what he knows and can see about the accused, he should do so, notwithstanding the certification. We hold only that he is not *bound* to hold a hearing on the issue of competency when an accused is certified to be competent and there is no objection to such certification.[6]

3. It is not impossible that Congress intended the granting of a § 301(a) motion for mental examination (which requires a prima facie showing of insanity or incompetency) and the consequent commitment to St. Elizabeths to be sufficient, without more, to call into operation the provisions of § 301(b) dealing with restoration of competency. By this reasoning a certification of competency after a § 301(a) examination and commitment would, under § 301(b), authorize the court to go ahead with the trial in the absence of objection. Admittedly the legislative history is unclear on this point, yet the result accords with the congressional designs "to speed up procedures without prejudicing the accused" and "to avoid the burden of a judicial hearing and determination unless the accused or the Government desires it." S.REP. No. 1170, 84th Cong., 1st Sess. 3 (1955); H.R.REP. No. 892, 84th Cong., 1st Sess. 3 (1955).

4. Contee v. United States, 94 U.S.App. D.C. 297, 215 F.2d 324 (1954).

5. We recognize that the question of competence to stand trial has been held to be reviewable both by *habeas corpus* and under 28 U.S.C. § 2255. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717 (1938). We do not consider those cases as controlling in this case. In those cases there had been no certificate of competency and the issue had not been raised until the collateral attack upon the conviction was filed, and it was held that a hearing was required to determine the issue. Here, on the other hand, we have a certificate of competency and a statute which we read as requiring a hearing only if the accused or the Government objects to the certification.

6. The primary concern of the dissent seems to be that often, and specifically in this case, the report from the hospital merely sets forth the opinion of the superintendent in a conclusionary, "boiler-plate" form and that such reports are *per se* inadequate. With all due respect, we suggest that this position overlooks the language of the statute that a report or certification of the *opinion* of the superintendent as to an accused's competency "shall be sufficient" to authorize the entry of an appropriate order. We cannot say that the District Judge abused his discretion in letting the trial proceed on the basis of such a report, certainly in the absence of objection by the defendant and of any other circumstances which render the superintendent's opinion substantially suspect. In this

■ Since, as we hold, the desirability of a hearing on the matter of competency following receipt of the hospital's report that the accused is competent is a question that lies within the discretion of the trial judge when the report is not objected to by either party, the real question before us is whether the failure to hold such a hearing in this case constituted an abuse of discretion.

Appellant's reliance on his earlier commitment to St. Elizabeths as a basis for urging that a hearing was mandatory overlooks entirely the clear distinction between incompetency to stand trial and insanity.[7] In the circumstances of this case the distinction is highly significant, for although appellant had been committed in 1956, at no time had he been found incompetent to stand trial. Indeed, his competency to stand trial was not in issue in 1956. As a matter of fact, appellant was determined to be competent to stand trial by both St. Elizabeths and D. C. General prior to the proceedings involved here.

Consequently, the *Gunther, Contee* and *Kelley*[8] cases are inapplicable in this case. In each of those cases, we held that a judicial determination of competency based on a hearing was required, in view of an earlier judicial finding, after a hearing, of the accused's incompetency to stand trial. As we pointed out in Kelley v. United States, 95 U.S.App.D.C. 267, 270, 221 F.2d 822, 824 (1954):

> "[A] judicial determination of mental competency to stand trial is required *when * * * there has been an earlier judicial determination of incompetency and no subsequent judicial determination of competency.*"
> [Emphasis supplied.]

Similarly, in the *Gunther* case, emphasis was placed on the need to find a *restora-tion* of competency before one earlier *adjudicated* incompetent could be required to stand trial.

In this case there was no prior adjudication of incompetency. We do not imply that the fact of appellant's commitment to St. Elizabeths in 1956 was of *no* evidentiary value. Indeed, the fact of that commitment would be relevant to the question of whether a motion for a § 301 (a) mental examination to determine competency should be granted. Whether such a prior commitment alone makes out the prima facie showing required by § 301(a) we do not decide, nor do we need to, since two such motions for examination were granted in this case.

■ Nothing in the record of this case could warrant our holding that the trial judge abused his discretion by proceeding to trial without a competency hearing. Accordingly, we sustain the trial judge in this respect.

One final difficulty in this aspect of the case cannot be ignored. While § 301(b) clearly refers to the certification authorizing "the court to *enter an order* thereon adjudicating [the accused] to be competent to stand trial" [emphasis supplied], no formal order appears in the record of this case. However, since the trial judge had before him the certifications of St. Elizabeths and D. C. General of appellant's competency to stand trial, he was certainly acting on the basis of those certifications in permitting the case to proceed. The question, therefore, is whether, in the circumstances of this case, the absence of a formal order was sufficiently prejudicial to appellant to require our vacating his conviction.

We think that a reversal on the basis of such a procedural defect would be an unwarranted elevation of form over substance. There had been no prior deter-

---

case there is no question of lack of notice to the defendant and his counsel of the report or of their acceptance of it without objection, nor do there appear to be any such other circumstances.

7. Stewart v. *United States*, 107 *U.S.App. D.C.* 159, 161, 275 F.2d 617, 619 (1960),

rev'd on other grounds, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

8. Kelley v. United States, 95 U.S.App. D.C. 267, 221 F.2d 822 (1954).

mination of appellant's incompetency, the present certifications were before the trial judge, neither an objection to the certifications nor a request for a hearing was made, and finally, neither reference to nor dependence on appellant's incompetency appears in the trial record. We are of the opinion that, in this case, the failure to enter a formal order was harmless error, although we strongly suggest that such orders be entered in future cases to record the fact that the District Judge considered the report and that it was available to the parties. There is no suggestion in this case that the District Judge ignored the report or was not acting on it in proceeding to trial. Nor is there any indication of a lack of either notice of the certifications or opportunity to object to them.

Thus the posture of the case as we turn to the sanity issue is that appellant was competent to assist in his defense, and the question is whether or not a competent defendant may refuse to plead insanity even though there may be facts available to support that defense; and if so, whether the trial judge commits error by not raising the issue of insanity *sua sponte* and instructing the jury thereon (assuming, of course, that the trial judge knows of the facts which could support an insanity plea).

■ In our view, a defendant may not keep the issue of insanity out of the case altogether. He may, if he wishes, refuse to raise the issue of insanity, but he may not, in a proper case, prevent the court from injecting it. We as much as held this in Overholser v. Lynch, 109 U.S.App.D.C. 404, 288 F.2d 388 (1961), and that aspect of our holding was not disturbed by the Supreme Court. However, in the event of acquittal by reason of insanity following a de-

fendant's affirmative refusal to rely on this ground, the automatic commitment procedures of D.C.Code § 24–301(d) would not apply. Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

■ One of the major foundations for the structure of the criminal law is the concept of responsibility, and the law is clear that one whose acts would otherwise be criminal has committed no crime at all if because of incapacity due to age or mental condition he is not responsible for those acts. If he does not know what he is doing or cannot control his conduct or his acts are the product of a mental disease or defect, he is morally blameless and not criminally responsible. The judgment of society and the law in this respect is tested in any given case by an inquiry into the sanity of the accused. In other words, the legal definition of insanity in a criminal case is a codification of the moral judgment of society as respects a man's criminal responsibility; and if a man is insane in the eyes of the law, he is blameless in the eyes of society and is not subject to punishment in the criminal courts.[9]

■ In the courtroom confrontations between the individual and society the trial judge must uphold this structural foundation by refusing to allow the conviction of an obviously mentally irresponsible defendant, and when there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case. Just as the judge must insist that the *corpus delicti* be proved before a defendant who has confessed may be convicted, so too must the judge forestall the conviction of one who in the eyes of the law is not mentally responsible for his otherwise criminal acts. We believe then that,

---

9. "The legal and moral traditions of the western world require that those who, of their own free will and with evil intent (sometimes called *mens rea*), commit acts which violate the law, shall be criminally responsible for those acts. Our traditions also require that where such acts stem from and are the product of a mental disease or defect as those terms are used herein, moral blame shall not attach, and hence there will not be criminal responsibility." Durham v. United States, 94 U.S.App.D.C. 228, 242, 214 F.2d 862, 876, 45 A.L.R.2d 1430 (1954).

in the pursuit of justice, a trial judge must have the discretion to impose an unwanted defense on a defendant and the consequent additional burden of proof on the Government prosecutor. So, our query is whether in this case there was a combination of factors which required the trial judge to inject the insanity issue for, if such factors existed, his failure to do so is an abuse of discretion and constitutes error.[10]

■ In the instant case, both hospital reports available to the trial judge negated a defense of insanity (the one indicating no mental disease or defect, the other indicating lack of productivity). There was testimony by appellant on cross-examination that he had previously been committed to St. Elizabeths, but the details were not brought out since the Government was trying to show only that appellant was familiar with the hospital grounds where the attack took place. At the time of this testimony, the trial judge, in a bench conference, quite properly advised defense counsel[11] that if there was an insanity issue to be raised it should be raised. Near the end of the trial, defense counsel informed the court that both he and his client agreed that the insanity issue should not be raised. There was, of course, no request by appellant for any insanity instructions and none were given. Under these circumstances we conclude that the trial judge did not abuse his discretion by not injecting the issue of insanity into the case. Accordingly, there being no error, the convictions are affirmed.

Affirmed.

WASHINGTON, Circuit Judge, did not participate in this opinion but reserves the right to file a statement of his views at a later date.

BAZELON, Chief Judge, with whom J. SKELLY WRIGHT, Circuit Judge, concurs (dissenting).

Appellant was convicted for sexual assault and robbery. He had been adjudged of unsound mind and civilly committed to St. Elizabeths Hospital in 1956 when he was 13 years old, following "an act of homicide on an 80 year old woman who, he said had attempted to incite him sexually." At that time the Mental Health Commission found him "of unsound mind suffering from a Psychosis with Mental Deficiency." In February 1962, he was placed on convalescent leave and required to report to the Hospital from time to time. The alleged crimes occurred seven months later while he was still on convalescent leave.

After indictment herein, the Government obtained an order committing Whalem to St. Elizabeths for mental examination pursuant to D.C.Code § 24–301. By letter dated March 5, 1963, the Superintendent of the Hospital informed the court, without elaboration of its inquiry or diagnosis, that Whalem had been examined and found to be

"mentally competent to understand the nature of the charges pending against him and to assist properly in the preparation of his defense. * * [T]hat he is * * * now, and was suffering from mental disease, Schizophrenic Reaction, Catatonic Type (In Remission), on or about September 28, 1962, but that the alleged offenses * * * were not products of this mental illness.[1]

On the day of this report, Whalem was discharged from the Hospital's roll of civil patients with the notation "condition improved" and transferred to jail, in the custody of the United States Marshal.

The court ordered a further mental examination at D. C. General Hospital on

---

10. No rigid standard exists to control the District Court in deciding whether it should require the insanity issue to be submitted. As a matter within the sound discretion of the District Court, this question must be resolved on a case by case basis.

11. Defense counsel had objected to the testimony on the grounds that if it were admitted he would probably have to raise the insanity issue.

1. The report did not mention mental deficiency, a condition which was a factor in the 1956 civil commitment.

defense counsel's urging that, because the alleged crimes occurred while Whalem was on convalescent leave, "St. Elizabeths Hospital is in no position to render an impartial opinion [on the insanity issue]." D. C. General reported, also without elaboration, that Whalem was "mentally competent as to be able to understand the proceedings against him and to be able to properly assist in the preparation of his defense." [2]

Whalem was thereupon brought to trial. Defense counsel did not raise the issue of his competency and the record discloses no judicial consideration, inquiry or determination of the issue.

## II

The majority opinion construes D.C. Code § 24–301 to establish a uniform procedure for judicial determination of competency. Upon receiving the psychiatric report, the trial judge may adjudicate an accused incompetent or competent, as the report recommends. Or he may order a hearing, or require the hospital to elaborate its report. Upon objection to the report, the court must grant a request for a hearing or elaboration. And, in certain circumstances, it would be an abuse of discretion for the judge not to take one or the other of these courses *sua sponte*.[3]

I concur in this reading of the statute. The court properly rejects the view, apparently held by some lawyers and judges,[4] that hospital reports respecting competency are binding upon the trial court. Its error, in my opinion, lies in its determination that discretion was not here abused.

I think the trial judge must exercise his discretion to require elaboration of hospital reports where, as here, the record is uninformative because a cursory report has been filed.[5] As the majority recognize, determination of competency " * * * requires not only a clinical psychiatric judgment but also a judgment based upon a knowledge of criminal trial proceedings that is peculiarly within the competence of the trial judge." [6] Necessarily, then, it is the judge who must have the information relevant to decision. A naked conclusion that an accused can "properly assist in the preparation of his defense and understand the nature of the charge pending

2. The report also noted that Whalem "does exhibit manifestations of a passive-aggressive character disorder with a low normal or borderline intellectual endowment. He achieved a maximum I.Q. (intellectual quotient) of eighty-four * * *. In my opinion this character disorder does not constitute a mental disease or defect."

3. Whatever a defendant's right to waive the insanity defense, he cannot waive the question of competency, Seidner v. United States, 104 U.S.App.D.C. 214, 260 F. 2d 732 (1958) ; it may be raised by the court, the Government, or defense counsel, D.C.Code § 24–301; 18 U.S.C. § 4244.

4. *E. g.*, United States v. Heath, D.D.C. Crim.No. 126–63, hearing of January 17, 1964 ("The hospital says he is competent * * * he is competent") ; United States v. Wider, D.D.C.Crim.No.849–62 (" * * * I am not a psychiatrist and these psychiatrists * * * say that he is mentally competent * * * ").

5. Since the District Court employs a form of order for examination that is phrased in terms of the legal issue of competency (*i. e.*, whether the defendant is "unable to understand the proceedings against him or to properly assist in the preparation of his defense"), hospital authorities may mistakenly believe that they are allowed or required to decide the issue. Report of the Committee of the Judicial Conference of the District of Columbia on Problems Connected with Mental Examination of the Accused in Criminal Cases, Before Trial 36–42 (1965), hereinafter cited as REPORT.

6. Gunther v. United States, 94 U.S.App. D.C. 243, 246, 215 F.2d 493, 497 (1954). "[Competency] denotes the intellectual and emotional capacity of the accused to perform the functions which are essential to the fairness and accuracy of a criminal proceeding. * * * The question in any case is whether mental illness has disabled the specific functions of personality which sound policy in the administration of criminal justice require before the accused may be subjected to adversary proceedings on the charge against him." Government's memorandum p. 9, Pouncey v. United States, No. 18565.

against him" provides no basis for independent judicial judgment.[7] The judge needs to know how the accused was tested, and for what, and what mental characteristics the examining psychiatrists believed relevant to the inquiry.[8] He needs to know whether there are opposing diagnostic factors or minority views, how any conflicts were resolved, and how each examiner reasoned from the raw psychiatric data to his "legal" conclusions.[9]

Although the majority suggests that "circumstances" may on occasion require elaboration of a report before trial, it approves a conclusory form of report which assures that such circumstances will never come to light.[10] I would not thus attribute to Congress a purpose to permit the trial court to accept hospital conclusions on faith alone. Committee reports of the 1955 amendments to D.C. Code § 24–301 reveal an assumption that trial judges would receive meaningful information through the hospital reports. Congress' concern was with the possible burden on medical resorces if a *hearing* was required in every case by our decision in Gunther v. United States.[11] It reasoned that this burden was unneces-

sary because it assumed that the views of medical authorities would be "adequately covered by their written report." [12]

The importance of the congressional assumption that essential information would be "adequately covered" in the hospital report is highlighted by the parallel construction of the statute. It would be intolerable if an accused could be committed as *in*competent on the mere basis of an unelaborated statement of conclusion, simply because no one objected. Such commitments are for an indefinite period, without the protections of either trial or civil commitment procedures. Serious questions of due process would arise if they were rested on so narrow a ledge of inquiry and information.[13]

Moreover, a report justifying the congressional assumption could provide an intelligent basis for judicial decision, without burdening hospital authorities with attendance in court. Such reports have been required in other federal districts,[14] and were recently recommended in strongest terms by a Judicial Conference Committee in this circuit.[15] The

7. See Hess & Thomas, *Incompetency to Stand Trial: Procedures, Results, and Problems*, 119 AM.J. OF PSYCHIATRY 713, 715–16 (1963), a study of incompetency to stand trial in Michigan: "[T]he courts fail to use the physician in his appropriate role. The majority of the psychiatrists' reports were empty and meaningless, and yet were accepted and acted upon by the courts as if they contained information which could be construed as evidence and, as such, decided upon."

8. It may well be that the examining psychiatrists require legal assistance in determining the requirements of competency, REPORT at 99–100.

9. Compare REPORT at 36–38 *with id.* at 118–24.

10. In concluding, at note 6, that the statute contemplates a short-form report, the majority seem to put all their reliance on the statutory use of the word "opinion." I do not believe that this word, commonly used in legal contexts to

denote a statement of reasons for a conclusion as well as the conclusion itself, will bear the weight thus placed upon it—especially in view of the legislative history and the gloss placed on 18 U.S.C. § 4244, a similar, nationally applicable statute, by the United States District Courts in the Western District of Missouri, note 14 *infra.*

11. Note 6 *supra;* Holloway v. United States, No. 18017, decided Nov. 5, 1964.

12. H.R.REP.No.892, 84th Cong., 1st Sess. 12 (1955); S.REP.No.1170, 84th Cong., 1st Sess. 12 (1955).

13. See Foote, *A Comment on Pre-Trial Commitment of Criminal Defendants*, 108 U.PA.L.REV. 832 (1960).

14. The Western District of Missouri, REPORT at 127. It is notable that the Medical Center for Federal Prisoners at Springfield, Missouri, perhaps the only federal facility with psychiatric resources comparable to St. Elizabeths, is within this District.

15. REPORT, *passim.*

only opinion the Superintendent of St. Elizabeths Hospital or any other psychiatrist is competent to render is a medical one.[16] If the statute can be read to keep legal and psychiatric experts within their respective areas of competence, it is poor statutory construction to read it otherwise.

Whatever doubts may exist as to the sufficiency of conclusory reports as a basis for determining competency in other cases, such reports were clearly insufficient in the circumstances of this case. At the time of these criminal proceedings, there was an outstanding judicial adjudication of insanity, which could not be altered without subsequent judicial action. There was no such action. Insanity is presumed to continue until the contrary is shown,[17] and this presumption is relevant to an accused's competency to stand trial.[18] The Supreme Court has strongly implied that this presumption raises sufficient question of competency to require a full hearing.[19]

The majority notes that there are two hospital reports in this case—one from St. Elizabeths and one from D. C. General Hospital. The point seems to be that two reports are sufficient to overcome any inferences from the prior con-

finement, even if one report is not. But both reports state empty conclusions. Hence judicial discretion is not significantly more informed by two than one. In my opinion the warning sounded by appellant's previous adjudication of insanity makes the information before the court plainly insufficient for the required determination of fitness to stand trial.

Since I conclude that the record on competency was fatally deficient, it is unnecessary to consider whether the trial judge acted upon it.[20] However, the majority's inference that a judicial decision on competency was in fact made is without record support. Both statutory provisions discussed by the majority require judicial action *by order*. No reason is given why the same requirement does not apply here. Unless the record makes clear that the matter has been considered,[21] I think proper judicial action should not be inferred in the absence of an order. A silent record is equally consistent with either a failure to decide the issue, or a mistaken belief that psychiatric views are binding.[22] In view of these possibilities, the record's failure to reveal judicial awareness of the competency issue cannot be deemed harmless.

16. See Durham v. United States, 94 U.S. App.D.C. 228, 214 F.2d 862 (1954); Carter v. United States, 102 U.S.App. D.C. 227, 252 F.2d 608 (1957).

17. Hurt v. United States, 327 F.2d 978, 981 (8th Cir. 1964); Kitchens v. United States, 272 F.2d 757, 760 (10th Cir. 1959); Life Ins. Co. of Va. v. Herrmann, 35 A.2d 828 (Mun.Ct.App.D.C. 1944). *Cf.* Orencia v. Overholser, 82 U.S.App.D.C. 285, 287, 163 F.2d 763, 765 (1947); Barry v. White, 62 App. D.C. 69, 64 F.2d 707 (1933).

18. Simmons v. United States, 253 F.2d 909, 911 (8th Cir. 1958); Ashley v. Pescor, 147 F.2d 318, 321 (8th Cir. 1945).

19. In Frame v. Hudspeth, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989 (1940), reversing, 109 F.2d 356 (10th Cir. 1939), the defendant had been adjudicated insane and committed to a hospital in December 1935. He escaped in January 1936 and committed the crimes charged.

He pleaded guilty while still under the adjudication of insanity. In an ensuing habeas corpus action, the court of appeals noted that "[i]t was the court's duty, after having called to his attention the fact that the prisoner at the bar had been adjudged insane and had been an inmate of an insane asylum, to make a finding as to the mental condition of the accused." But that court held that since the trial judge had questioned petitioner at length, there was an implied finding of competence. The Supreme Court reversed and remanded.

20. For the same reason, I do not consider the majority's suggestion that in some cases, trial judges must refuse to allow waiver of an insanity defense. *Cf.* REPORT at 85–92.

21. Cooper & Kennedy v. United States, 119 U.S.App.D.C. 142, 337 F.2d 538 (1964).

22. Note 4 *supra*.

I think there must be a new trial.[23]

### III

A word about the role of counsel seems appropriate. Counsel is no more bound than the judge by the psychiatric report. He has a duty to be informed of the details of the examination in order to determine whether it was adequate according to professional medical standards.[24] He should make known his own observations to the hospital and to the court.[25] In all cases where "boiler-plate" reports are filed, he should request an order requiring their elaboration. In any event, he should spread on the record before the court all available information necessary for an informed decision.[26] And if he is not satisfied that the court has such information, he should seek a plenary hearing on the issue.

These are not responsibilities easily discharged, especially for appointed counsel. "[T]here are a great number of indigent defendants and relatively few lawyers familiar with criminal trial practice. Hence, it is very often necessary to appoint lawyers who understandably know little about such practice, and even less about the special difficulties of presenting the insanity defense,"[27] or questions of incompetency. It may sometimes be impossible for counsel to render effective assistance without an opportunity to consult psychiatric experts in order to understand the requisites of examination and to assess the meaning and reliability of diagnosis.[28] If so, he should inform the court and request such services. Whether or not he needs such services, the issue of competency is so important to the accused and to the court that it should not be decided by default.

BAZELON, Chief Judge, may file a further expression of his views.

FAHY, Circuit Judge (dissenting):

Appellant had previously been adjudged of unsound mind and civilly committed to St. Elizabeths Hospital and was on convalescent leave when the conduct for which he was tried occurred. I agree with Chief Judge Bazelon that in these circumstances the answer to the question of his competency to go to trial required a hearing followed by a judicial determination or at least a more elaborate report from St. Elizabeths, also followed by a judicial determination.

---

23. Reversal, rather than remand for nunc pro tunc proceedings, seems to be the proper remedy in view of the Supreme Court's rejection of the remand remedy in Dusky v. United States, 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). The Court held that because of the

"difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent."

24. REPORT at 28-35, 97-99.

25. Compare Cooper & Kennedy v. United States, 119 U.S.App.D.C. 142, 337 F.2d 538, 539 n. 4 (1964) (concurring opinion).

26. See text at notes 7-9 *supra.*

27. Jackson v. United States, 118 U.S.App. D.C. 341, 336 F.2d 579, 585 (1964) (separate opinion).

28. Nickerson, *The Expert Technical Witness on Trial,* 50 A.B.A.J. 731, 733 (1964). For discussion of the availability of these services on a cost-free basis to indigents, see Brennan, *Law and Psychiatry Must Join in Defending Mentally Ill Criminals,* 49 A.B.A.J. 239, 242-43 (1963); Bazelon, *The Responsibility of the Accused—and the Psychiatrist,* 4 BULL.N.Y.BRANCH, AM. PSYCH.ASS'N 1 (Feb. 1962); compare the recently enacted Criminal Justice Act, 18 U.S.C. § 3006A(e). See note 8 *supra.*