**UNITED STATES of America**

v.

**Thomas L. ROBERTSON.**

**Crim. No. 1631–71.**

United States District Court,
District of Columbia.

March 7, 1977.

William H. Collins, Jr., Michael A. Pace, Asst. U. S. Attorneys, Washington, D. C., for plaintiff.

James Wright, Washington, D. C., for defendant.

MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

In a bifurcated jury trial the defendant, Thomas L. Robertson, was convicted of second degree murder, assault with intent to kill while armed and carrying a pistol without a license. After a hearing to determine whether an insanity defense should be raised over defendant's objections, this Court resolved that question in the negative. On appeal, the case was remanded to supplement the record by hearing evidence supporting and in opposition to the imposition of the insanity defense. *United States*

*v. Robertson,* 165 U.S.App.D.C. 325, 335–6, 507 F.2d 1148, 1158–59 (1974).

On December 4, 1974, (six weeks after the decision of the Court of Appeals) defendant, through counsel, for the first time advised the Court that he wished to assert the insanity defense in his own behalf. Additional evidence was taken on March 17 and 18, 1975. By memorandum filed November 21, 1975, this Court found that there was an evidentiary basis for the insanity defense, and further stated that:

> Since the defendant, with the assistance of his present counsel, now vigorously asserts his desire to present an insanity defense, this Court respectfully suggests that the question whether or not the defense should have been imposed sua sponte is now moot and this case should be remanded for a new trial.

On January 23, 1976, in its Supplemental Opinion on Remand, the Court of Appeals agreed with this Court and remanded the case for a new trial. It left to this Court the exercise of its discretion to determine whether or not to limit the new trial to the issue of criminal responsibility. At a status hearing on February 20, 1976, defendant, through counsel restated and reaffirmed his desire to assert the insanity defense and this Court determined that the new trial would be limited to the issue of criminal responsibility. The trial was set for April 26, 1976.

During the voir dire of the jury panel on April 26, 1976, defendant, through counsel, announced at a bench conference that it was then his desire not to raise the insanity defense. The voir dire was completed, the jury selected and sworn and preliminary instructions were given to the jury and the Court then recessed for lunch. After consultation with counsel for the Government and for the defendant and after questioning of the defendant by the Court with respect to his abrupt change, the trial was recessed until April 27, 1976.

Defendant was fully advised by the Court concerning the ramifications of his decision to forgo the assertion of the insanity defense. After being advised, defendant continued his refusal to assert the insanity defense or to permit his counsel to do so. In light of defendant's decision, and since, in the eventuality that the Court decided to raise the defense *sua sponte,* new counsel would have to be appointed as *amicus curiae,* defendant, through counsel, moved for a mistrial. The Court granted defendant's motion.

This course of proceeding left for resolution the issue whether or not the Court, *sua sponte,* should impose the insanity defense over the objection of defendant. The Government objected to the raising of the defense and its request was granted to augment the record of the March 17 and 18, 1975 hearings with the testimony of Dr. Elizabeth Strawinsky, a psychiatrist who had examined defendant on two occasions but who had not testified during the March 1975 hearings.

On May 14, 1976, Dr. Strawinsky, a psychiatrist and Director of Forensic Programs at St. Elizabeths Hospital prior to her retirement in July 1974, testified that she had chaired the staff conference resulting from defendant's admission in October 1971 for pre-trial examination. She conducted a mental examination as it would be done in a conference setting. She found the defendant to be polite, cordial and comfortable. His speech was not pressured or irrational nor was there a loss of conversational controls. He seemed to have a good memory, was oriented as to time, place and person, comprehended her remarks and questions, was alert, seemed of average intelligence and was neither hallucinating or delusional. He emphasized his maleness and borrowed heavily from ideas of "Black Power" and "Black Muslims." Robertson considered himself a "Black Leader" who did not think it was murder to kill Aleshire because he was a "White Honky" and not human and who viewed the shooting of Hart as an attempt to put an "underling" in his place.

At the staff conference, Dr. Strawinsky had the benefit of ward notes indicating no bizarre behavior, psychological reports revealing no psychotic ideation or brain dam-

age, and a sociologist report revealing that, except for one isolated incident more likely attributable to drug reaction rather than mental disease or defect, defendant functioned normally in his family environment. She diagnosed defendant as suffering from "anti-social personality, severe," which, while a mental illness, is not a mental disease or defect in the eyes of the law. One suffering from this illness is extremely self-oriented, interprets the environment to suit his needs, develops moral standards unique to himself and is unable to experience feelings of guilt. Dr. Strawinsky specifically excluded schizophrenia schizo-affected type, as diagnosed by Dr. Alice Gullattee in March 1975, because she saw no thought disorders, and defendant had no history of mood fluctuations (elations or depressions). In her opinion the offenses committed by defendant on August 21, 1971, were not a product of a mental disorder.

In June 1972, Dr. Strawinsky had re-examined Robertson, had seen no significant differences in him and had reaffirmed her earlier diagnosis. Her opinion with respect to both of her earlier diagnoses remained unchanged.

In addition to the testimony of Dr. Strawinsky, this Court received in evidence defendant's grades and letters from defendant's former teachers at Federal City College. The letters characterized defendant as a "serious student," "conscientious and enthusiastic," possessing a "quick and independent mind," and a man of "good character and judgment." A letter from Pride, Inc., defendant's former employer, described him as a man of worthwhile character as an instructor in their Continuing Education Department.

This Court is aware of the holding of the Court of Appeals in *Whalem v. U. S.,* 120 U.S.App.D.C. 331, 346 F.2d 812 (1965) that

when there is a sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become a part of the case. This Court is further mindful of its own conclusion on November 21, 1975, that "there is sufficient evidence of a serious mental illness which substantially affected defendant's mental and emotional processes and behavioral controls such as to require a determination of his criminal responsibility." However, in light of defendant's subsequent reversal of his decision after appeal to pursue an insanity defense, this Court has reconsidered its position. Upon lengthy examination of the entire record in this matter, it is the opinion of the Court that the Court should not *sua sponte* impose an insanity defense in this case.

A number of factors have appeared relevant to the Court in reaching its decision: the quality of the evidence supporting the insanity defense; the defendant's wish in the matter; the quality of defendant's decision not to raise the defense; the reasonableness of defendant's motives in opposing presentation of the defense; and the Court's personal observations of the defendant throughout the course of the proceedings against him.

There is evidence in the record which could be used to argue that the defendant was suffering from a mental disease or defect at the time of the offense.[1] However, there is also substantial evidence leading to a contrary conclusion.[2] The *Whalem* case requires a trial judge to refuse "to allow the conviction of an obviously mentally irresponsible defendant." 346 F.2d at 818. That decision does not require *sua sponte* imposition of the insanity defense every time there is enough evidence in a case to make the defense tenable.

---

1. The reports and testimony of Dr. Alice Gullattee and Dr. Ronald L. Dockett, as well as Dr. Alex J. Whyte's brief observation of the defendant support the conclusion that defendant Robertson was suffering from a mental disorder (some form of Schizophrenia) and that there was a casual relation between that illness and the killing.

2. The testimony of Dr. Albert E. Marland and Dr. John R. Cavanaugh strongly rejects the possibility of any mental disorder here. The testimony of Dr. Elizabeth Strawinsky, who examined the defendant only two months after the offense, likewise refutes the presence of a mental disease or defect.

It is clear to the Court that the desires of the defendant concerning presentation of the issue of insanity must be accorded some weight. While the *Whalem* opinion holds that a defendant may not in a proper case prevent the trial court from injecting the issue, the defendant's wishes in the matter "are highly relevant; and his active opposition renders especially delicate a decision by court or counsel to override them." *Cross v. U. S.*, 128 U.S.App.D.C. 416, 389 F.2d 957, 960 (1968). Throughout the various stages of his initial trial, defendant here consistently expressed the wish that the insanity defense not be invoked. Although defendant indicated a desire to employ the defense after the Court of Appeals remanded the case for further hearings, defendant on the date of retrial again expressed the clear desire not to raise the insanity issue. He stated:

I have not desired the insanity defense from the outset of these proceedings and still retain this desire, even though entirely unsatisfied with my day in court or the due process of law.

I even requested my court-appointed attorney by the appeals court to not file my appeal on the basis of the insanity issues, but then agreed to at least wait and see what the ideas would produce . . ..

I still want the court records to show I still refuse an insanity defense for personal reasons of a quasi-political nature, and want the Court to make a determination. If they wish to proceed *sua sponte,* that I am satisfied to demur.

I am not insane and I still say I am not insane. So, I cannot in good faith and honor of the United States Constitution

pursue an insanity defense. It would be malingering . . ..

Once it was brought to my attention and understanding that I had misconstrued the facts of the remand, that it was only about the insanity issue, well, I no longer felt obligated to pursue such a defense. (Transcript, April 26, 1976, pp. 38–9, 42–3).

The quality of the defendant's determination to forego an insanity defense has had a significant impact on the Court's decision here. A number of facts have impressed the Court in this regard. Defendant has been consistently found competent to stand trial and to participate in his own defense.[3] There is no past history or prior judicial finding of either insanity or incompetence. The record in no way reflects that any of the various counsel who have represented the defendant have had any difficulty in communicating with the defendant or in obtaining his assistance in the presentation of his case. There have been no charges and there is no evidence that counsel misrepresented the defendant in any way during the course of the initial trial and the Court notes that although trial counsel originally advised the defendant in favor of utilizing an insanity defense, in the face of psychiatric evaluations finding Robertson competent to stand trial counsel stated that they would abide by their client's wishes against presenting the issue. *See, U. S. v. Robertson, supra,* 165 U.S.App.D.C. 325, 507 F.2d at 1151. In light of the above facts, the Court is satisfied that Robertson's decision to forego raising the insanity defense was a rational decision competently reached. The Court does not believe that it should interfere with that decision.[4]

3. Even the psychiatric evaluation performed by doctors of defendant's choosing found Robertson competent for trial.

4. The Court's decision to honor defendant's opposition to imposition of an insanity defense is supported by the language and implication of the United States Supreme Court's opinions in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Just as a defendant may elect to forgo representation by counsel and just as a

defendant may enter a plea of guilty for reasons other than his guilt, so too should a defendant who is competent and whose decision is made rationally and with an awareness of its consequences be allowed to proceed to trial without introduction of an insanity defense, even though there may be evidence in the case which could support such a defense. What the opinion in the *Whalem* case protects against is the conviction of a defendant who is obviously mentally irresponsible and who should not be held criminally responsible for his acts. In the

This Court is also of the opinion that defendant's motives in opposing introduction of the insanity defense are understandable. Defendant has stated his reasons to be "personal" and of a "quasi-political nature." Defendant's crimes arose in part out of protest:

> As a Black man, I made a stand . . . whether or not I am right in the eyes of the law . . . (Transcript, April 26, 1976, pp. 43–4).

Defendant believes that exposition of the insanity issue would denigrate that protest. In view of the possible consequences of an insanity verdict in terms of length and nature of commitment and in view of defendant's beliefs, the Court cannot say that defendant's purposes in opposing the insanity issue are unreasonable.[5]

Lastly, this Court has had extensive opportunity to examine the facts of this case and to observe the behavior and demeanor of the defendant. The Court has listened to the defendant's statements on the record. The Court has also drawn upon its own personal experiences as an aid in understanding the defendant and his situation. The Court finds no basis in what it has observed for interjecting the insanity issue in the face of defendant's opposition to the issue's presentation.

judgment of this Court, the facts in this case do not approach the type of situation which the Court of Appeals had in mind in *Whalem.*

5. See *Trest v. U. S.,* 122 U.S.App.D.C. 11, 350 F.2d 794 (1965) for an example of a case in which the appellate court recognized that valid reasons could exist why a person charged with a criminal offense might decide not to raise the insanity defense.