(699 P.2d 542)

No. 57,287

STATE OF KANSAS, *Appellee,* v. BRUCE A. RAMBO, *Appellant.*

Opinion filed
May 16, 1985.

*Steven C. Sherwood,* of Wichita, for the appellant.

*Geary N. Gorup,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, for the appellee.

Before FOTH, C.J., SWINEHART, J., and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

SWINEHART, J.: Defendant Bruce A. Rambo appeals from a jury verdict finding him guilty of aggravated battery.

On June 26, 1983, defendant Bruce A. Rambo and his room-mate, Moses D. Bowen, returned from a club to find defendant's house burglarized. The following day, after contemplating who might have committed the burglary, defendant decided Bowen knew who had stolen defendant's household goods. Defendant had known Bowen for approximately one month and believed Bowen's friends had burglarized his home. Defendant confronted Bowen with these beliefs and an argument ensued between the two. Both parties apparently became upset, and Bowen slammed a bar stool down on the floor. As Bowen took hold of a second bar stool, defendant got a rifle and pointed it at him. Bowen threw the second bar stool, and defendant shot him in the abdomen. Soon thereafter, defendant helped Bowen into defendant's van and drove him to a hospital. Defendant told Bowen to tell the authorities at the hospital that the shooting was accidental. Bowen did so until defendant left his presence, then told a police officer the shooting was not accidental.

Defendant was subsequently arrested and confessed to shooting Bowen. Defendant was charged with aggravated battery and Kent Wirth was appointed as his counsel. Wirth filed a Motion for Examination to Determine Defendant's Competency. After receiving the doctor's reports, the district court entered an order of defendant's incompetency to stand trial. Two months later defendant was returned to the court from Larned State Hospital and was found competent to stand trial. After defendant's preliminary examination, Wirth filed a Notice of Intention of Insanity Defense. Defendant underwent a mental examination and Wirth filed a second motion for an order to determine incompetency. The district court again found defendant incompetent to stand trial. Defendant wrote a letter to Wirth asking him to withdraw as counsel. Wirth then filed a motion to do so, which the court granted. Thereafter, defendant was represented by the public defender. Three months after the defendant had last been found incompetent, the court examined his medical reports and found him competent to stand trial. Defendant's trial began approximately one month later.

On the day of trial, the prosecution informed the court in chambers that although examining physicians were of the opinion defendant was insane at the time of the commission of the crime, the public defender had sent a letter to the prosecutor's

office indicating that no insanity defense would be raised. Upon inquiry by the court, the public defender confirmed that information, expressed his decision to waive any defense upon the ground of insanity, and stated he would object to the presentation of any psychological or insanity evidence at trial. The public defender noted that defendant did not wish to raise the insanity defense and had asked his previous counsel to withdraw primarily for having filed the notice of insanity defense.

Defendant testified he shot Bowen in self-defense. He stated that approximately eleven months prior to the shooting he had sustained multiple injuries in an airplane crash and that Herrington rods had been surgically implanted in his back. Those rods were still in his back at the time of the shooting and impaired defendant's physical mobility.

The jury found defendant guilty of aggravated battery.

Defendant first argues that the trial court abused its discretion by failing to inquire into the defendant's mental condition at trial, by allowing the public defender to waive the insanity defense, and by failing to grant a new trial on its own motion after learning of a psychiatrist's opinion that defendant was insane on the date of the crime. Defendant makes no claim of ineffective assistance of counsel.

The basic principles here involved are not in dispute.

"The question of the competency of any defendant tried for a felony is a most vital matter. It is the policy of the law of this state not to try persons while they are insane. Our statute, G.S. 1949, 62-1531, and our decisions, *State v. Ossweiler,* 111 Kan. 358, 207 Pac. 832; *State v. Brotherton,* 131 Kan. 295, 302, 291 Pac. 954; *State v. Lammers,* 171 Kan. 668, 237 P.2d 410, and *State v. Severns,* 184 Kan. 213, 336 P.2d 447, contemplate that when an accused is afflicted with any of the types of insanity or mental disability specified in the statute, or any claim is made in his behalf that he is so afflicted, either before, or during the trial and before the verdict is rendered, it becomes the duty of the court and counsel of record to ascertain by one of the statutory methods whether he is in a fit mental condition to be proceeded against. It is a basic requirement of our law that a proper determination of the competency of the defendant should be made in every case where a real doubt is raised as to his competency." *State v. Kelly,* 192 Kan. 641, 643, 391 P.2d 123 (1964).

Both our statutory scheme and our decisional law place a duty upon the trial court to, under certain circumstances, ascertain whether a defendant is competent to stand trial. See K.S.A. 1984 Supp. 22-3302; *Outland v. State,* 219 Kan. 547, 548, 548 P.2d 725 (1976); *State v. Kelly,* 192 Kan. at 644-45. The law is less clear

concerning the duty of a trial court to ascertain, on its own motion, whether a defendant was insane at the date of the offense.

Although this issue has not been squarely addressed in Kansas, cases outside our jurisdiction have examined the court's duty to impose the insanity defense upon a defendant over his objections. It is generally recognized that when there is a "sufficient question" as to a defendant's mental responsibility at the time of the crime, that issue must become a part of the case. *Whalem v. United States*, 346 F.2d 812 (D.C. Cir. 1965). See *United States v. Robertson*, 430 F. Supp. 444, 446 (D.D.C. 1977). In holding that the court should not *sua sponte* impose an insanity defense in *Robertson*, the court listed the following factors as relevant to that decision:

"[T]he quality of the evidence supporting the insanity defense; the defendant's wish in the matter; the quality of defendant's decision not to raise the defense; the reasonableness of defendant's motives in opposing presentation of the defense; and the Court's personal observations of the defendant throughout the course of the proceedings against him." *United States v. Robertson*, 430 F.Supp. at 446.

In examining the first of those factors, the *Robertson* court stated:

"There is evidence in the record which could be used to argue that the defendant was suffering from a mental disease or defect at the time of the offense. However, there is also substantial evidence leading to a contrary conclusion. The *Whalem* case requires a trial judge to refuse 'to allow the conviction of an obviously mentally irresponsible defendant.' 346 F.2d at 818. That decision does not require *sua sponte* imposition of the insanity defense every time there is enough evidence in a case to make the defense tenable." 430 F.Supp. at 446.

The court noted that defendant's wish not to invoke the insanity defense was "highly relevant," and found that decision to have been made rationally and with an awareness of its consequences.

Similarly, *United States v. Wright*, 627 F.2d 1300 (D.C. Cir. 1980), held that the trial court did not abuse its discretion in failing to raise an insanity defense *sua sponte* over defendant's objection. There, although defendant's capacity to conform his conduct to the requirements of the law was doubtful, sound reasons existed for the decision not to raise the defense.

In reaching that conclusion, the court stated:

" 'No rigid standard exists to control the District Court in deciding whether it should require the insanity issue to be submitted. As a matter within the sound

discretion of the district court, this question must be resolved on a case by case basis.' To date, we have never overturned a district court determination on this issue. Nor have we accepted guidelines proposed to limit district court discretion. The reason for this continuing trust in the judgment of the district court is simple: the assessment of grounds for interposing the insanity defense is so factbound, so dependent on nuances of experts' credibility and the defendant's presentation of himself, that the familiarity of the trial court is central to a sound decision." *United States v. Wright*, 627 F.2d at 1307.

With the above principles in mind, we review the record in the present case to determine whether there was a combination of factors which required the trial court to inject the insanity issue.

The record includes a written report of Dr. Howard Brodsky, a psychiatrist. That report concludes that in Dr. Brodsky's opinion the defendant was insane at the time he shot Mr. Bowen. No other expert opinions in the record either support or refute that conclusion. The only other indication that the defendant was suffering from a mental disease or defect was defendant's testimony elicited on cross-examination that at some time, not designated in the record, and for some purpose, not revealed in the record, he had seen two psychiatrists. No other factors point toward defendant's insanity.

Throughout the various stages of his trial, defendant consistently expressed his clear desire that the insanity defense not be invoked. Defendant felt so strongly about that decision that he asked his first attorney to withdraw, primarily for having filed a notice of insanity defense. Defendant's second attorney, the public defender, decided to abide by his client's wishes against presenting the defense. The record in no way reflects that any of the various counsel who have to date represented the defendant have had any difficulty in communicating with the defendant or in obtaining his assistance in the presentation of his case. There have been no charges and there is no evidence that counsel misrepresented the defendant in any way during the trial.

Defendant's insistence upon waiving his insanity defense, in the context of the time at which the decision was made, appeared to be in his own best interest. Defendant's claim of self-defense, if successful, would prevent defendant's criminal incarceration and defendant's civil commitment. Even if that defense were unsuccessful, there are sensible, logical reasons for assuming the defendant would prefer a finite criminal sentence rather than an

indeterminate commitment following an acquittal by reason of insanity.

Finally, the district court had several opportunities to observe defendant in the courtroom before deciding not to interpose the defense.

Considering the above factors, we find no abuse of discretion in the trial court's refusal to interpose the insanity defense over defendant's objection. Nor do we see any error in the trial court's allowing the public defender to waive that defense. The right to assert the insanity defense is not such an inherently personal fundamental right that it can be waived only by the accused and not by his attorney. *Vessels v. Estelle*, 376 F.Supp. 1303 (S.D. Tex. 1973), *aff'd* 494 F.2d 1295, *cert. denied* 419 U.S. 969 (1974). Defendant's claim of error concerning the trial court's failure to grant a new trial on its own motion was not briefed on appeal, and is considered abandoned. *State v. Words,* 226 Kan. 59, 63, 596 P.2d 129 (1979).

Defendant next argues that the trial court erroneously admitted evidence of defendant's previous psychiatric treatment. The public defender, having waived the insanity defense, wished to present defendant's testimony as a model of clarity and accuracy of perception so as to bolster defendant's claim of self-defense. Accordingly, the public defender wished to exclude any reference to defendant's previous mental treatment, from which the jury may have inferred defendant's lack of clear thought.

Upon direct examination, defendant testified to his airplane accident and subsequent recuperation, his acquaintance with Bowen, and the events immediately surrounding the shooting. No mention was then made of defendant's psychiatric treatment which commenced after the airplane crash. On cross-examination, the prosecution asked whether defendant had seen Dr. Gary Porter as a result of his accident. Defendant's counsel then objected and the jury was retired to the jury room. The public defender explained that he objected to psychiatric testimony on several grounds, all of which the court overruled. The trial court stated that the defendant had "raised this issue" by defendant's testimony and by his cross-examination of a State's witness. The trial court expressed that conflicting testimony had been presented of the shooting incident, and that defendant's previous psychiatric treatment may shed some light upon defendant's perception of events and the reasonableness of his beliefs and

actions. The jury returned and the prosecution elicited from the defendant the fact that defendant had seen two psychiatrists after his airplane crash.

The extent to which cross-examination of a witness may be allowed is in the sound discretion of the trial court and, unless prejudice or abuse of discretion is shown, there will be no reversal. *State v. Hutchinson*, 222 Kan. 365, 564 P.2d 545 (1977); *State v. Guffey*, 205 Kan. 9, 17, 468 P.2d 254 (1970). Where the defendant partially explains a subject on direct examination, the prosecutor on cross-examination may explore that subject further. *State v. Bagby*, 231 Kan. 176, Syl. ¶ 5, 642 P.2d 993 (1982). In the present case, the defendant testified on direct examination about his airplane accident and physical rehabilitation, but made no mention of his subsequent mental treatment. No abuse of discretion has been shown in the trial court's finding that the broad subject of defendant's recuperation had been only partially explained on direct examination. Defendant's claim of prejudice is unpersuasive, in light of the fact that defendant's counsel at trial made no attempt to explain defendant's psychiatric treatment, or the reasons therefor, to the jury by redirect examination.

Defendant's final argument on appeal concerns the propriety of the jury instructions on defendant's claim of self-defense.

The self-defense instruction, as given by the trial court to the jury, states:

"A person is justified in the use of force against an aggressor when, and to the extent it appears to the person and the person reasonably believes that such conduct is necessary to defend the person against such aggressor's imminent use of unlawful force.

"A reasonable belief implies both a belief and the existence of facts that would persuade a reasonable person to that belief. In order to rely on self-defense as a defense, a person must have a belief that the force used was necessary to defend one's self and, also, show the existence of facts that would support such belief in the mind of a reasonable person. The use of excessive force may be found to be an 'unlawful manner' of committing the 'lawful act' of self-defense. A defendant may use the degree of force which reasonably appears to be necessary to repel an attack."

Defendant's counsel timely objected to this instruction on grounds different than those raised on appeal. Therefore, our scope of review is limited to a determination of whether this instruction is "clearly erroneous." K.S.A. 22-3414(3); *State v. Cantrell*, 234 Kan. 426, 673 P.2d 1147 (1983); *State v. Price*, 233

Kan. 706, 664 P.2d 869 (1983). " 'An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict.' " *State v. Maxwell,* 234 Kan. 393, 399, 672 P.2d 590 (1983).

The language of the given instruction is apparently derived from the following sources:

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force. A reasonable belief implies both a belief and the existence of facts that would persuade a reasonable man to that belief." *State v. Simon,* 231 Kan. 572, 575, 646 P.2d 1119 (1982); PIK Crim.2d 54.17.

"[I]n order to rely on self-defense as a defense, a person must have a belief that the force used was necessary to defend himself and, also, show the existence of some facts that would support such belief." *State v. Childers,* 222 Kan. 32, 48, 563 P.2d 999 (1977).

"The use of excessive force may be found to be an 'unlawful manner' of committing the 'lawful act' of self-defense . . . ." *State v. Warren,* 5 Kan. App. 2d 754, Syl. ¶ 2, 624 P.2d 476, *rev. denied* 229 Kan. 671 (1981).

"A defendant may use the degree of force which reasonably appears to be necessary to repel an attack . . . ." *State v. Cates,* 223 Kan. 724, 728-9, 576 P.2d 657 (1978).

The given instruction is fully supported by the above-cited authorities and is not erroneous.

Next, defendant argues the court erred in failing to give the following two requested instructions:

"a. 'Where there is great disparity of strength between the two, death or great bodily harm is possible without any weapon, and circumstances may justify deadly force to repel such an attack.'

"b. 'If a reasonable person with defendant's qualities is reasonably induced, and in good faith does, believe that another is about to assault and injure him, the defendant need not wait until the assault is made, but may act upon appearances, as he in good faith at the time regards them, and defend himself.' "

Defendant's counsel admits that the purpose of these instructions was to emphasize "the unique nature of the defendant's physical disabilities." The trial court's basis for not giving these two proposed instructions was that the instructions were argumentative and purported to state as facts matters which the jury must decide as a trier of fact. A careful reading of the two instructions supports the trial court's conclusion.

It is well recognized that "[i]nstructions should be general in nature insofar as possible, and should not be argumentative or

unduly emphasize one particular phase of the case." *Timsah v. General Motors Corp.*, 225 Kan. 305, Syl. ¶ 3, 591 P.2d 154 (1979); *Hampton v. State Highway Commission*, 209 Kan. 565, 498 P.2d 236 (1972). The first proposed instruction unduly emphasizes one particular aspect of the total evidence presented to the jury, namely, that the defendant had rods in his back at the time of the shooting. The second proposed instruction does the same by referring to "a reasonable person with defendant's qualities." The jury had been made aware of the defendant's back rods by the testimony at trial. The jury also had an opportunity to view both the defendant and Bowen and examine their respective heights and weights. No additional emphasis on the defendant's or Bowen's size or strength was required.

The trial court's refusal to give the two proposed instructions which focused upon defendant's physical condition at the time of the shooting was proper.

Affirmed.