■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE BAXTER, Also Known as GEORGE DANIEL JOHNSON, Appellant.— Appeal by defendant from a judgment of the County Court, Suffolk County, rendered July 31, 1967, convicting him of murder in the first degree and rape in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The evidence was more than sufficient to support the verdict of the jury on both counts. In our opinion, defendant was not deprived of his right to the effective assistance of counsel by reason of the fact that defendant's assigned counsel did not interpose the defense of insanity at the time of the commission of the crime; nor does the fact that the trial court did not impose the

defense warrant the granting of a new trial. There is nothing to indicate that defendant's assigned counsel was not skilled in advocacy or that the defense was not professionally competent. It is clear that the attorney was fully aware of the availability of the defense of insanity and that, in the exercise of judgment and trial tactics, he consciously chose not to interpose it. Trial counsel expressly stated that sanity was not an issue and expressly requested the trial court not to charge on the subject of insanity. It appears from the record that counsel had good reason not to interpose the defense. The evidence against defendant was entirely circumstantial. Therefore, counsel was justified in defending by denial of the commission of the crime rather than by relying on insanity as a defense of confession and avoidance. Furthermore, it may be that counsel had consulted with defendant, who was not prepared to risk being confined again to a State mental institution (see *People* v. *Gonzalez*, 20 N Y 2d 289, 294). It is not the function of this court to determine that defense counsel should have done that which he had decided advisedly not to do (*People* v. *De Renzzio*, 19 N Y 2d 45, 51). In any event, there was here, at most, an error of judgment or tactics during the course of the trial, neither of which is sufficient ground for vacatur of the conviction (*People* v. *Tomaselli*, 7 N Y 2d 350; *People* v. *Brown*, 7 N Y 2d 359). It is our further opinion, as hereinabove stated, that the trial court was not in error in failing to override the decision of assigned counsel and to impose the defense of insanity on defendant. The three Judges who voted to require the trial court to submit the question of insanity to the jury in *People* v. *Gonzalez* (*supra*), despite the refusal of the defendant to raise the issue at the trial, did so primarily because the defendant was not represented by counsel and because there had been no finding under the applicable provisions of the Code of Criminal Procedure that he was competent to make his defense. In the case at bar there was such a specific finding and order. It may be that under circumstances such as obtained in *Gonzalez*, wherein a defendant of questionable mental competence chooses to conduct his own defense and where the facts strongly suggest a defense of insanity, an additional burden falls upon the trial court to act in the defendant's behalf by imposing the defense. However, we would not require a trial court to abandon its neutrality and to present to the jury a defense specifically omitted and rejected by presumably competent defense counsel. In point of fact, a meritorious argument for reversal might very well have been made herein had the trial court adopted such a course and interfered with the conduct of the defense. Beldock, P. J., Benjamin and Kleinfeld, JJ., concur; Munder and Martuscello, JJ., dissent and vote to reverse the judgment and to order a new trial, at which the issue of defendant's insanity when the crime was committed shall be determined, with the following memorandum: This is an appeal from a judgment of conviction for murder in the first degree and rape in the first degree in which the defendant was sentenced to a life term on the murder count and 10 to 20 years on the rape count, the terms to run consecutively. The conviction was for a particularly heinous rape-murder of an 11-year-old child committed on November 9, 1964. Factually, defendant's guilt was fully and clearly established on the trial. His legal responsibility for his acts, however, is a highly doubtful element, which, though touched on in several psychiatric reports, was never explored on the trial or submitted for the jury's consideration. On his appearance before a committing Magistrate on November 10, 1964, defendant was sent to Central Islip State Hospital for a mental examination pursuant to section 658 of the Code of Criminal Procedure to determine his competency to stand trial. After three weeks at the hospital the two staff psychiatrists who had been assigned to conduct the

examination reported jointly that two years previously the defendant had been committed to a mental hospital from a prison hospital in North Carolina on a diagnosis of schizophrenia, chronic undifferentiated type. In September, 1964, he was permitted a three-day home visit with his aunt in Fayetteville. Instead of returning to the hospital, he went with his father to New York. In October, 1964, he was arrested on an assault charge, on which he was released on bail furnished by his father. The report states: "He became progressively more upset, began drinking steadily and wouldn't talk to anyone, and left home November 5, 1964." After stating the examiners' personal observations, the report concluded: "the consensus is that this defendant is suffering from delusions of persecution and has auditory and visual hallucinations. It is the consensus that he has been mentally sick for a long time and is unable to understand the charge, the proceedings, or assist with his defense. The diagnosis is that of Schizophrenia, Paranoid Type. The prognosis is poor." The indictment was returned on December 4, 1964. On December 11, 1964 defendant was arraigned. He was then represented by the attorney who had been assigned by the committing Magistrate. After that attorney interposed the pleas for defendant of not guilty and not guilty by reason of insanity, he was relieved and a new attorney was assigned by the County Court. On December 22, 1964, the court confirmed the psychiatric report "that the above named defendant is presently insane," and defendant was committed to Matteawan State Hospital "until he shall no longer be in such state of idiocy, imbecility or insanity as to be incapable of understanding the charge and proceedings against him and of making his defense." In April, 1966 the Superintendent of Matteawan State Hospital certified that defendant was no longer incapable of defending the action and he was returned for trial. Meanwhile the second attorney had been relieved and the Suffolk County Legal Aid Society was assigned to represent defendant. After his return to the Suffolk County Jail, defendant was sent to Central Islip State Hospital for another examination as to his competency to stand trial. On July 21, 1966 two psychiatrists, one of whom had examined defendant in November of 1964, reported that defendant said "that while he was at Matteawan he feared for his life because of the rough treatment that was meted out to" him and "that he is willing to face the charges and would rather go to prison for a day to life than remain at Matteawan." They concluded that, "while he suffers from a chronic mental illness," he is able to understand the charges and assist in his defense. They retained the original diagnosis of schizophrenia, paranoid type, but said his condition was much improved. Under date of September 13, 1966, an order was made adopting and confirming the report of the psychiatrists as to defendant's mental capacity to stand trial. Trial was commenced on March 6, 1967, and defendant was represented by newly assigned counsel, Legal Aid Society counsel having been relieved. The trial continued through March 13, 1967, when the jury found defendant guilty as charged, except for a sodomy count which had been dismissed on motion of defense counsel at the end of the People's case. At the *Huntley* hearing which had immediately preceded the trial, the defense counsel referred to defendant's confinement in a mental institution and moved to exclude from evidence defendant's oral admissions on the ground of his insanity. Upon the trial, however, defense counsel offered no evidence to support the defense of insanity; and the only reference to defendant's sanity occurred during the following colloquy between the court and defense counsel after the latter had rested his client's case: "THE COURT: All right, * * * I notice here in your brief that you asked for some instructions concerning sanity. [COUNSEL]: Oh, I put that in, your Honor, just for the — THE COURT (Interposing): Yes.

Now, I think we both agree upon the law that everybody is presumed sane until some evidence of his lack of sanity is introduced. Now, what evidence do you say was introduced to show lack of sanity here? [COUNSEL]: I say none, your Honor. Therefore he is presumed sane. THE COURT: In other words, we agree that sanity is not an issue in this trial? [COUNSEL]: Absolutely not. THE COURT: Because I would hesitate to go into the very involved explanation of insanity when it shouldn't be in here. [COUNSEL]: Well, my position is that nothing has come up which would rebut the presumption of sanity. Therefore, nothing should be charged to the jury on the question of sanity." While the psychiatrists' reports on this defendant were in each instance the subject of a notice of hearing pursuant to section 662-a of the Code of Criminal Procedure, and the reports were confirmed, it would appear that the hearings were waived, for the record does not disclose that any actual hearings took place. The entire history of this defendant and his case should have been known to defense counsel and was undoubtedly known to the District Attorney and to the court. To repeat, at the time the crime was committed the defendant was a. w. o. l. from a mental hospital in North Carolina from which he had not been discharged. The psychiatric report of December 1, 1964 which preceded defendant's commitment to Matteawan, and which was made very shortly after the commission of the crime, stated: "It is the consensus that he has been mentally sick for a long time." The report of July 21, 1966, concluding that defendant was then able to understand the charges and assist in his defense, contained the reservation: "while he suffers from a chronic mental illness", and retained the previous diagnosis of "Schizophrenia; Paranoid Type". These reports, taken in conjunction with defendant's previous history of commitment to a mental hospital, are at least some evidence that defendant was insane at the time of the commision of the crime (see *People* v. *Boundy*, 10 N Y 2d 518). That the defendant was considered capable of understanding the charges against him and of assisting in his defense has no bearing on his criminal responsibility for the commission of the act (cf. *Matter of Buttonow*, 23 N Y 2d 385). There was, in our opinion, a sufficient indication of insanity to require the raising of this issue upon the trial. At the time of sentence, defendant's counsel referred to his client's background and to the medical reports which had been submitted to the court. He asked that defendant, because of his mental condition, be given medical treatment instead of a jail term. The Trial Judge sentenced defendant to consecutive prison terms, but indicated his awareness of defendant's mental condition as follows: "I feel that for matters which obviously you can't control, it's for society's best interests to have you removed from it. And again I hope that in your more lucid moments you do have some peace of mind, realizing that you can't hurt people, though perhaps you don't intend to hurt them." Relative to the statutory protections afforded a defendant by reason of insanity, our Court of Appeals has said: "It is the duty, as it should always be the inclination, of courts to give effect to these provisions of law, and, so far as human judgment and intelligence can determine, to see to it that no person is punished for an act done while mentally incapable of distinguishing the character of such act, or is incompetent to understand and appreciate the cause and object of his punishment" (*People* v. *McElvaine*, 125 N. Y. 596, 600–601). It is argued that the failure to present the defense of insanity was a calculated risk deliberately taken by defense counsel. In our view of the circumstances of this case, however, such failure constituted a denial of effective or adequate representation (cf. *People* v. *Tomaselli*, 7 N Y 2d 350; *People* v. *Brown*, 7 N Y 2d 359). While a defendant may refuse to raise the issue of insanity, he may not, in a proper case, prevent the court from injecting it. A Trial Judge does have discretion to impose an

unwanted defense on a defendant; and, when the combination of factors is such as to require him to inject the issue of insanity, his failure to do so is an abuse of discretion and constitutes error (see *Pate* v. *Robinson,* 383 U. S. 375; *Whalem* v. *United States,* 346 F. 2d 812; *Cross* v. *United States,* 354 F. 2d 512). In *People* v. *Montgomery* (24 N Y 2d 130) a hearing on a *coram nobis* application was granted the defendant on the question of whether his failure to serve and file a notice of appeal was attributable to the failure of assigned counsel to advise him of his right to appeal. It was held that an indigent defendant cannot lose his right to appeal simply because the court has delegated the State's responsibility to a member of the Bar who has failed to carry out his duties and that the courts are the surrogates of the State's responsibility in this field. We believe that in the instant case the failure of assigned counsel to advance the defense of insanity was even more drastic and became a responsibility which the court was bound to assume.