UNITED STATES of America

v.

Beachey L. WRIGHT, Appellant.

No. 74–1603.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1975.

Decided Feb. 25, 1975.

**1312**

Fred Warren Bennett, Washington, D. C. (appointed by this Court), for appellant.

Paul N. Murphy, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John H. Bayly, Jr., Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and TAMM, Circuit Judge.

BAZELON, Chief Judge:

Beachey L. Wright was convicted in United States District Court by a jury on January 30, 1974 of destroying the property of the United States.[1] Thereafter, the District Court pursuant to Whalem v. United States, 120 U.S.App. D.C. 331, 346 F.2d 812, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965) and its progeny[2] raised *sua sponte* on Wright's behalf a defense of insanity. Wright waived his right to a jury trial on this issue and the District Court then found on the basis of the expert testimony of one psychologist that Wright suffered from a mental disease or defect, that his destruction of government property was a product of that disease or defect and that Wright lacked the capacity to conform his conduct to the requirements of the law. As a result of these findings, the District Court found Wright not guilty by reason of insanity and committed him to Saint Elizabeths Hospital for examination and scheduled a release hearing within fifty days, all pursuant to D.C.Code, tit. 24, § 301(d) (1973). At the release hearing, the District Court after hearing expert testimony found that Wright had not established by a preponderance of the evidence that he met the conditions for release and ordered Wright committed until he could establish these conditions. The District Court pursuant to § 301(d) denied Wright's request for a jury trial on the issue of whether his mental condition met the standards for commitment. Wright appeals from the order of his commitment. We reverse and order Wright released unless the government commences civil commitment proceedings under D.C.Code, tit. 21, §§ 541–45 (1973) within thirty days.

◼ Assuming for purposes of decision only that § 301(d) was intended to

---

1. *See* 18 U.S.C. § 1361 (1970). Wright was also convicted by the jury of desecrating the flag in violation of 18 U.S.C. § 700 (1970) but the District Court granted Wright's judgment of acquittal, finding insufficient evidence of specific intent.

2. *See* United States v. Robertson, No. 72–1781 (D.C.Cir. Oct. 22, 1974), at 18–19 and cases cited.

apply or could constitutionally apply[3] to defendants acquitted by reason of insanity of purely federal law or Title 18 offenses in United States District Court, we think it crystal clear that § 301(d) does not apply when the trial court raises the defense of insanity *sua sponte.* The language of the statute seems clear enough on this point.[4] Any residual doubt is laid to rest by the following unequivocal language from the House Report on the most recent amendments to § 301:[5]

> "In accordance with Lynch v. Overholser [369 U.S. 705 (82 S.Ct. 1063, 8 L.Ed.2d 211) (1962)], this automatic commitment [established by § 301(d)] applies only when the defendant himself has raised the defense of insanity. It does not apply when the court itself raises the defense pursuant to the requirements of Whalem v. United States [*supra*]."

Since § 301(d) does not authorize Wright's commitment, the only other statutory scheme which would permit the commitment is the civil commitment statutes of the District of Columbia, D.C. Code, tit. 21, §§ 541–45 (1973). Even assuming that the District Court would have an equitable power to commence civil commitment procedures under that scheme,[6] the respondent in a civil commitment proceeding in the District has the right to a jury trial on the issue of whether his mental condition meets the requirements for commitment[7] and the government is required to prove beyond

a reasonable doubt that the respondent's mental condition is within the intendment of the statute.[8] Since it is conceded that Wright and not the government bore the burden of proof at the release hearing held by the District Court[9] and that Wright was denied his right to a jury trial upon written request, it follows that his commitment was not pursuant to §§ 541–45 and we find no other valid basis for it.

■ The government offers two arguments to avoid this conclusion, neither of which are persuasive. First, the government contends that Congress mistakenly relied on Lynch v. Overholser in the above-quoted excerpt since the rationale of *Lynch,* the dangers in ordering automatic commitment upon an acquittal where the defendant raised only a reasonable doubt as to his legal sanity, is no longer applicable with the passage of § 301(j). It follows, suggests the government, that Congress really intended to apply § 301(d) to all acquittals by reason of insanity, and this intent should be effectuated by ignoring the ill-conceived decision to give effect to a court decision made irrelevant by the passage of § 301(j). As an initial matter, it is not all clear that § 301(j) may be constitutionally applied to a federal court prosecution of a Title 18 offense.[10] Assuming that it is, we think *Lynch* rests of a broader ground: that the court should not presume that Congress meant to withdraw the substantial procedural protections of civil commitment in favor of

---

**3.** *See* United States v. Thompson, 147 U.S. App.D.C. 1, 452 F.2d 1333 (1971), cert. denied, 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972), discussed in relation to § 301 in United States v. (La Vance) Greene, 160 U.S. App.D.C. 21, 48-49, 489 F.2d 1145, 1172–73 (1973), cert. denied, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974) (Statement of Bazelon, C. J.) and in *id.* at 1160 n. 1 (Statement of Leventhal, J.).

**4.** D.C.Code, tit. 24, § 301(d)(1) (1973): "If any person tried upon an indictment or information for an offense raises the defense of insanity . . . ." *Compare* this language *with* the formulation of § 301(j).

**5.** H.R.Rep.No.907, 91st Cong., 2d Sess. 74 (1970).

**6.** *Compare* the specific procedures of D.C. Code, tit. 21, §§ 541–44 (1973).

**7.** D.C.Code, tit. 21, § 545 (1973).

**8.** In re Ballay, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973).

**9.** We do not intimate here that this shift of the burden of proof at a "release" hearing after acquittal is or is not consistent with Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968). *See* Johnson v. Robinson, No. 74–1149 (D.C.Cir. Dec. 23, 1974), at 9 n. 18.

**10.** *See* note 3 *supra.*

the less substantial protections of criminal commitment without a clear statement of intent. *Lynch* involved statutory construction and thus Congress knew it had no obligation to follow the holding. Congress evidently believed that persons acquitted by reason of insanity when the defense was raised *sua sponte* should be given the greater protections. This intent should be given effect.

The second contention is that application of § 301(d) only when the defendant himself raises the defense of insanity permits a manipulation of the legal system and re-introduces the "revolving door" condemned by the Congress in the passage of the amendments to § 301(d) in the following manner. A defendant who has a substantial insanity defense may decide to waive that defense and present, as the government terms it, a "thinly disguised insanity defense on the merits." If the trial court failed to raise the defense *sua sponte*, then the defendant has a ground for appellate reversal on the basis of *Whalem*. If the trial court does raise the defense, then the defendant may be acquitted and also may avoid civil commitment, thus "having it both ways" in the government's pithy manner of expressing the point. Initially we must seriously question whether this tactical choice may be so facilely employed as the government suggests. We think the dangers of waiving a substantial insanity defense are not so slight that they may be risked on the assumption that either the trial court will raise the defense for the defendant or that the defendant is better off convicted of a crime than committed pursuant to § 301(d). In some cases this latter possibility might well be acceptable (*e. g.* where the offense carries only a slight penalty and commitment may be indeterminate); Wright's case appears to be of that ilk. But there is no evidence that he contemplated this strategic ploy. Rather he waived the defense because he believed his acts were commanded by God and he was not insane to follow those commands. In any event, there is no reason to believe that limitation of § 301(d) to instances where the defendant pleads insanity substantially alters the tactical choice of whether to plead insanity or risk conviction rather than commitment, a tactical choice that exists regardless of § 301(d).

There is a further problem with this second argument. With the introduction of § 301(j) which shifts the burden of proof, the only difference between the burden of proof at a trial and at a civil commitment proceeding is the difference between proof by a preponderance of the evidence and proof beyond a reasonable doubt.[11] This "revolving door", if it may be so named, swings much less freely than that which Congress condemned in passing the amendments to § 301. We, therefore, cannot override the specific language of § 301(d) and the House Report.

---

11. *Compare* In re Ballay, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973) *with* § 301(j). Prior to enactment of § 301(j) a defendant would be acquitted on the basis of a reasonable doubt as to his sanity and could be committed only upon proof by a preponderance of the evidence that he was insane within the intendment of the commitment statutes. It was this situation which Congress thought improper and sought to change by amendment to § 301. *See* H.R.Rep.No.907, *supra* note 5, at 74. Congress felt that a person admittedly guilty of a crime could escape conviction because of a reasonable doubt as to his sanity and then escape commitment because the government failed to prove his insanity within the intendment of the commitment statutes. The latter requirement—proof by a preponderance of the evidence of a mental condition within the intendment of the commitment statutes—was imposed in Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968) and thus we have allegations in the House Report that Bolton v. Harris produced this "revolving door" in which the defendant would "have it both ways", *i. e.* acquittal and no commitment. The evidence, however, strongly demonstrate that this fear of the "revolving door" has not been borne out by experience. Since *Bolton,* every defendant acquitted by reason of insanity was committed thereafter unless Saint Elizabeths recommends release. *See* ·United States v. (La Vance) Greene, 160 U.S.App.D.C. 21, 48–49, 489 F.2d 1145, 1172–73 n. 73 (1973), cert. denied, —— U.S. ——, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974) (Statement of Bazelon, C. J.).

We thus reverse Wright's commitment and order him released within thirty days unless the government commences civil commitment proceedings.

So ordered.

FAHY, Senior Circuit Judge:

I concur, being of the opinion that 24 D.C.Code § 301(d) (1973) applies to the federal offenses for which appellant was indicted and tried in this case.