UNITED STATES of America

v.

Eddie HENRY, Appellant.

No. 78–1432.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 20, 1978.
Decided April 16, 1979.

Silas J. Wasserstrom, Washington, D. C.,
with whom Henry W. Asbill, Washington,
D. C., was on the brief, for appellant.

Richard W. Goldman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before WRIGHT, Chief Judge, McGOWAN, Circuit Judge, and FLANNERY,* District Judge.

**J. SKELLY WRIGHT, Chief Judge:**

In mid-1974, after his trial on federal and local firearms charges ended in a verdict of not guilty by reason of insanity, Eddie Henry was committed to St. Elizabeths Hospital. The present appeal is from the District Court's denial of his most recent motion for unconditional release.

Before this court Henry advances two grounds in support of his motion.[1] First, he asserts that his original commitment pursuant to the rather summary procedures specified in 24 D.C.Code § 301(d) (1973) for persons who successfully rely upon an insanity defense in criminal proceedings was unlawful because he never in the course of his trial "raise[d] the defense of insanity" within the meaning of the statute. Second, he asserts that in any event he may not lawfully remain incarcerated any longer pursuant to his original Section 301(d) commitment because he has already been at St. Elizabeths for a period greater than the maximum to which he would have been sentenced had he been convicted of the charges against him rather than acquitted by reason of insanity.

The District Court rejected both arguments, apparently finding as to the first that Henry did indeed raise the defense of insanity within the meaning of the statute.[2] Since we conclude that that finding is clearly erroneous on the facts of this case, we reverse and order that Henry be released unless the Government commences ordinary civil commitment proceedings under 21 D.C. Code § 541 et seq. (1973) within 30 days or within such longer period as the District Court in its discretion may deem necessary.[3] In light of our disposition we need not reach the other issues raised on this appeal. Accordingly, we intimate no view whatever as to those issues.

**I**

On January 30, 1974 two FBI agents armed with a tip that Henry had travelled to Washington with a firearm and intended to

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. In the District Court Henry also maintained that he had substantially recovered from his mental illness and would no longer be a danger to himself or others if released. The Government contested this point and the court concluded—based in part on the testimony of Henry's treating psychiatrist—that Henry was still mentally ill and potentially dangerous. He does not challenge this finding in the instant appeal.

2. The District Court couched its finding with respect to the first argument in words that do not precisely track the statutory language. In particular, the judge found that "the record * * * clearly indicates that the defense of insanity was not raised over Mr. Henry's objection." Supp.Tr. at 50. Section 301(d)(1) requires as a prerequisite to summary commitment that the defendant have "raise[d] the defense of insanity." In our view, the judge's

remarks were merely a rough paraphrase of what he correctly recognized to be a test predicated upon who raises the defense. This is quite clear when the judge's remarks are put in context. In the next sentence he stated that "the defense was raised by [a psychiatrist], called by the defense[,] and through questions then elicited by [defense counsel] * * *." This remark, which—as is discussed at note 18 infra—was factually inaccurate, does illustrate that the judge was focusing upon the statutorily relevant issue.

3. See United States v. Wright, 167 U.S.App. D.C. 309, 310, 511 F.2d 1311, 1312 (1975) (ordering release if civil commitment proceedings are not initiated within 30 days). Cf. Rouse v. Cameron, 128 U.S.App.D.C. 283, 287, 387 F.2d 241, 245 (1967) (en banc) (ordering grant of writ of habeas corpus "conditioned upon giving the Government a reasonable opportunity to institute civil commitment proceedings if it wishes").

use it on anyone who interfered with his plans to see the President of the United States sought Henry out at a local hotel.[4] After finding a loaded handgun in his jacket, they took him to St. Elizabeths pursuant to District of Columbia emergency commitment procedures. On February 5 an arrest warrant was issued charging Henry with interstate transportation of a firearm after having been committed to a mental institution.[5] *See* 18 U.S.C. § 922(g) (1976). A one-count grand jury indictment on this charge was filed on May 9. In addition, immediately before Henry's trial the Government added by information a charge of unlawful possession of a dangerous weapon—a D.C. Code violation. *See* 22 D.C.Code § 3214(b) (1973).[6]

Meanwhile, mental evaluations of Henry were under way at St. Elizabeths. On June 4, at the close of a competency hearing, he was found competent to stand trial. Thirteen days later he did so, after waiving his right to a jury. The trial judge concluded that at the time of the violation Henry "was suffering from a mental illness diagnosed as schizophrenia, paranoid type[,] and although he did know the wrongfulness of his conduct, he lacked the substantial capacity to conform his conduct to the requirements of the law." Tr. 61. He found Henry not guilty by reason of insanity and then committed him to St. Elizabeths pursuant to 24 D.C.Code § 301(d)(1) (1973). The hearing required by 24 D.C.Code § 301(d)(2)

(1973)[7] was held on September 25, 1974, and at its conclusion the court found that Henry was still suffering from mental illness and was likely to injure himself or others if granted liberty. Accordingly, the District Judge ordered him returned to St. Elizabeths.

Henry sought unconditional release pursuant to 24 D.C.Code § 301(k) (1973)[8] in early 1977 and was denied such release after his treating psychiatrist testified that he continued to suffer from mental illness and could still be dangerous if permitted to go free. Subsequent efforts to arrange a conditional release ended in failure when a scheme to place him with family fell through. In March of 1978 he again filed a motion for unconditional release pursuant to Section 301(k). The present appeal is from the District Court's denial of that motion.

## II

24 D.C.Code § 301(d) authorizes prompt commitment of persons who have successfully relied upon an insanity defense in criminal proceedings. More specifically, Section 301(d)(1) provides:

If any person tried upon an indictment or information for an offense *raises the defense of insanity* and is acquitted solely on the ground that he was insane at the time of its commission, he shall be com-

---

4. Testimony at trial indicated that Henry sought to see the President both to secure protection from various "radar" men who were after him and to offer the President the services of his "radar mind" to assist in solving the world's problems. Tr. 30, 54.

5. Henry was committed to a Veterans Administration hospital in Mississippi in May of 1970. He left without authorization in October and was administratively discharged five months later. *See* Record Entry 5 (District Court findings of fact).

6. We assume, as did the parties, that the District of Columbia insanity provisions codified at 24 D.C.Code § 301 (1973) apply to both the federal and local charges. A similar assumption was made in *United States v. Wright, supra* note 3, 167 U.S.App.D.C. at 310–311, 511 F.2d at 1312–1313.

7. That section codifies, with some alterations, this court's holding in *Bolton v. Harris,* 130 U.S.App.D.C. 1, 395 F.2d 642 (1968). In that case we construed a earlier version of § 301(d) to require that insanity acquittees committed pursuant to that section be given a hearing "with procedures substantially similar to those in civil commitment proceedings." 130 U.S. App.D.C. at 10, 395 F.2d at 651. The present statute makes the hearing requirement explicit but does not import the full panoply of safeguards which accompany civil commitment. *See* 195 U.S.App.D.C. ——, 600 F.2d at 926–927, *infra.*

8. Section 301(k) permits persons in custody pursuant to § 301 to apply to the court having jurisdiction for an order requiring their release.

mitted to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e).

(Emphasis added.) Section 301(d)(2) requires that persons confined pursuant to the preceding paragraph be given a hearing within 50 days to determine whether they are entitled to release.[9] And Section 301(k) permits those in custody pursuant to Section 301 to seek a judicial determination that they should be released.

This procedural package differs in two key respects from the civil commitment procedures applicable to persons other than insanity acquittees.[10] First, under 21 D.C. Code § 545 (1973) a prospective civil committee has the right to have a jury decide whether his condition meets the requirements for civil commitment. An insanity acquittee has no such right under Section 301. Second, the Government is required to prove beyond a reasonable doubt that the target of normal civil commitment proceedings is mentally ill and likely to be dangerous if left at liberty. *In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648 (1973). In the course of a Section 301(d)(2) release hearing, in contrast, the insanity acquittee bears by statute the burden of proving by a preponderance of the evidence that he is entitled to release.

The Congress which crafted the present statute recognized that Section 301(d) eliminates some of the procedural safeguards that normally accompany civil commitment. That Congress chose not to deprive *all* persons acquitted by reason of insanity of those safeguards.[11] Instead, building on the Supreme Court's decision in *Lynch v. Overholser,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962),[12] it decided that summary commitment would be appropriate only for persons who "raise[d] the defense of insanity," and not for those upon whom an insanity verdict was in any sense imposed by the court or the prosecution.[13] This congressional decision provides the fulcrum for Henry's argument. His claim is simply that he did not raise the defense of insanity within the meaning of Section 301(d) and thus could not lawfully have been committed pursuant to that section.[14] We agree.

First, we note that at no time and in no way did Henry or his attorney raise the insanity defense in the manner provided for by Congress in 24 D.C.Code § 301(j) (1973), which requires that written notice of intent to rely upon the defense be lodged with the court and served upon the prosecutor within 15 days of the entry of a plea of not guilty or at such later time as the court may "for

9. Section 301(e) authorizes the court to order the release of committed persons when hospital authorities determine that such release would be proper and prosecuting authorities are notified of that determination and do not object.

10. Those procedures are set forth at 21 D.C. Code § 541 *et seq.* (1973).

11. *See United States v. Wright, supra* note 3, 167 U.S.App.D.C. at 312, 511 F.2d at 1313, *quoting* H.R.Rep.No.907, 91st Cong., 2d Sess. 74 (1970) ("[T]his automatic commitment applies only when the defendant himself has raised the defense of insanity. It does not apply when the court itself raises the defense pursuant to the requirements of *Whalem v. United States,*" 120 U.S.App.D.C. 331, 346 F.2d 812 (*en banc*), *cert. denied,* 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965)).

12. In *Lynch* the Supreme Court had concluded as a matter of *statutory construction that the* predecessor to the current statute—which on its face required automatic commitment of *all*

insanity acquittees—was in fact more limited and did not apply to persons upon whom an insanity defense had been imposed. 369 U.S. at 719–720, 82 S.Ct. 1063. The Congress that amended the statute by adding the words "raises the defense of insanity" specifically referred to the *Lynch* holding. *See* H.R.Rep.No.907, *supra* note 11, at 74.

13. It is of course quite clear that an insanity verdict may—and indeed sometimes must—be imposed by the trial court. *See Whalem v. United States, supra* note 11. *See also United States v. Robertson,* 165 U.S.App.D.C. 325, 507 F.2d 1148 (1974).

14. In an affidavit prepared for the District Court proceedings from which the present appeal is taken, Henry asserted that he at no time intended to plead insanity and did not authorize his attorney to so plead on his behalf. *See* appellant's brief, Exhibit C.

good cause" permit.[15]  Second, the record reveals no statement by Henry himself indicating any intent to raise or rely upon an insanity defense.  Indeed, what indications we have suggest that Henry was reluctant to embark upon any course of action likely to lead to his commitment.  In a letter written to the court before trial, he complained about his counsel's performance on several counts—among them that "he was trying to commit me to the hospital without me knowing  *  *  *."[16]  Although Henry's complaints were less than fully lucid, they do indicate a negative attitude toward commitment and, by implication, toward the insanity defense.[17]

Third, defense counsel was not entirely clear about his own intentions with regard to the issue of insanity.  While he did question a St. Elizabeths psychiatrist about his client's mental condition at the time of the violations, Tr. 48–49, that psychiatrist was called as a Government witness, Tr. 41, and that line of questioning was initiated by the Government, Tr. 44.[18]  Counsel's next statements that seem to relate to the issue of insanity occurred at the close of the prosecution case when he moved for "a judgment of acquittal based on the fact that  *  *  * the defendant lacked the capacity to commit this particular crime  *  *  *."  Tr. 50–51.  This motion was made out of the defendant's hearing, amid indications that counsel and Henry were not entirely at one with regard to the proper defense strategy.[19]  Further, counsel was not in any event clearly referring to an insanity defense.[20]  Under the circumstances, we think it clear that this motion did not constitute raising the defense of insanity for purposes of Section 301.

Nor do we think that counsel's remarks at the close of the trial bring the case within Section 301.  The remarks—which

---

**15.**  Section 301(j)'s notice requirement is preceded by the phrase "*Insanity shall not be a defense* in any criminal proceeding in the United States District Court for the District of Columbia or in the Superior Court of the District of Columbia, unless  *  *  *"  (emphasis added).  This wording strongly suggests that the presence of the required written notice is a key indicia of the use of insanity *as a defense*.  It is, of course, only in the context of such use that § 301(d) commitment is available.

**16.**  The letter is appended to appellant's brief as Exhibit C and has been made part of the record by stipulation filed with this court on December 11, 1978.

**17.**  The Government suggests that Henry's failure to protest either his attorney's references to his mental state or the ultimate insanity verdict is dispositive as to his attitude toward the insanity defense.  Appellee's brief at 35, 40.  There is, however, no indication at all that Henry realized that his attorney was raising an insanity defense if, in fact, that is what the attorney did.  *See* 195 U.S.App.D.C. at ——  ——, 600 F.2d at 928–929, *infra*.  Certainly the letter referred to in text provides some support for the proposition that Henry would have objected had he known.

**18.**  In the course of the § 301(k) hearing which ended in the decision now appealed from, the District Judge apparently was confused as to who called the psychiatrist as a trial witness.  He first stated:

> The record in this case clearly indicates that the defense of insanity was not raised over Mr. Henry's objection.  It is quite clear from the record that the defense was raised by Dr. Polley, called by the defense[,] and through questions then elicited by his [Henry's] attorney  *  *  *.

Supp. Tr. at 50.  Counsel at the § 301(k) hearing pointed out that it was the Government that called Dr. Polley as a witness at trial and that the portion of the record in which the court found support for the contrary proposition was a transcript of the *competency* hearing, not the actual trial.  The court replied by reciting the date of the trial and stating, "I would certainly hold that the defense was not raised over the objection of Mr. Henry."  Supp.Tr. at 51–52.  No supporting findings or conclusions were provided save for those set forth in the above quoted sentence, and that sentence was undermined by the error concerning the impetus for Dr. Polley's testimony.

**19.**  In addition to the letter criticizing counsel, *see* note 16 *supra*, there is the fact that counsel and Henry disagreed as to whether Henry should take the stand.  Indeed, at the bench counsel voiced his disapproval of Henry's decision to testify.  Tr. at 51.

**20.**  Henry argues that this motion is best understood, not as an insanity defense, but as an argument resting upon his incapacity to have formed the specific intent to commit the violations alleged.  If counsel was referring in part to the possession offense, this is a possible construction.

were made immediately after the prosecutor had said in summation that the Government would not contest an acquittal by reason of insanity—were as follows:

I also request, Your Honor, that you resolve the issue in favor of Mr. Henry. It think it has been established that there is a mental disease or a defect and that that particular schizophrenia, paranoid type, manifests itself in these delusions which Mr. Henry has and I think it is those delusions that caused him to fail to conform his conduct to the requirements of the law.

He might realize that there is a wrongfulness to his conduct, but because of these delusions he is having, I think it has been submitted, Your Honor, that he cannot control or conform his conduct to the requirements of the law.

He hears these voices and he's deathly afraid of these voices and he feels these voices are out to get him and you have heard his testimony that he carried this gun merely for. protection from these voices.

It is on that basis that I would ask Your Honor to find him not guilty.

Tr. 59–60. In the first place, it is not clear whether counsel, at that late stage of the trial, was attempting affirmatively to raise an insanity defense or merely *recognizing* that *sua sponte* imposition of such a defense was inevitable. Further, what is unclear to us was probably even more opaque to Henry himself. Nowhere in these closing remarks—the first clearly in this vein made within Henry's hearing—did the attorney use the word "insanity" or otherwise give Henry any reason to believe that his not guilty plea might just have been supplemented with an insanity defense which could trigger automatic commitment. Thus the Government's suggestion that Henry's failure to protest is evidence that he raised the defense within the meaning of Section 301(d) is not terribly persuasive.

■ We do not, of course, dispute that a defendant's silence might suggest conscious acquiescence when the insanity defense is properly and explicitly pleaded, written no-

tice given, evidence introduced, and the issue otherwise clearly joined. But the facts before us are quite different. Not only is there no reason to assume that Henry had any idea of what may have been going on, but there are indications that had he had such an idea he would have objected. Where, as here, there is evidence that the Government's focus was not on convicting a mentally ill defendant, but rather on committing him in the wake of an insanity acquittal, Section 301's summary procedures will not be available unless counsel and the court can meet the heavy burden of ensuring that the defendant personally, as distinguished from his attorney, fully understands the proceedings against him and actually *raises* the insanity defense.

■ Congress chose to withdraw the procedural protections that accompany civil commitment for a particular category of insanity acquittees—those who consciously raise the defense of insanity. We do not believe that this court should extend the congressional category to include persons acquitted by reason of insanity where there is neither objective nor subjective evidence that they chose to rely upon an insanity defense or were aware that one had been interposed by counsel.

In sum, we find that in the particular circumstances of this case any finding that Henry raised the insanity defense is clearly erroneous. In consequence, his commitment pursuant to Section 301(d) was improper. It follows that his present incarceration is unauthorized by law; and, unless the Government commences civil commitment procedures within 30 days or such longer period as the District Court in its discretion may deem necessary, he must be released.

*So ordered.*

FLANNERY, District Judge:

I concur in the result.