**In the Matter of UNITED STATES of America**

v.

**Christopher D. POTTER.**

**Mag. Cr. No. 83–0274.**

United States District Court, District of Columbia.

April 8, 1986.

Harry J. Fulton, Public Defender Service, Mental Health Div., Washington, D.C., for defendant.

Colleen Kennedy, Asst. U.S. Atty., Washington, D.C., for the Government.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

### Background

On May 25, 1983, Defendant Christopher Potter was arrested at the Capitol for allegedly striking a United States Senator. The government filed an information charging Defendant with misdemeanor assault in violation of 22 D.C. Code § 504 on August 19, 1983. The same day, Defendant consented to trial before United States Magistrate Jean F. Dwyer.

Mr. Potter's trial began by Assistant United States Attorney John Finnegan reading a statement of what he believed would have been the testimony of the government's witnesses had they been called. Although the Court did not address Mr. Potter, his attorney, Allan Dale, indicated that he had no additions or corrections to make to the scenario Mr. Finnegan presented. Treating the government's statement as a stipulation of fact, the Court concluded that sufficient evidence was presented to warrant going forward with the defense. Trial Tr. at 5–6.

The defense called Dr. Thomas J. Polley, a staff psychologist at Saint Elizabeths Hospital. He testified concerning Mr. Potter's mental health, concluding that defendant was mentally ill on May 25, 1983 and that his mental illness prevented him from appreciating the wrongfulness of his acts and from conforming his behavior to the requirements of the law. Trial Tr. at 7–14.

After Dr. Polley's testimony, Defendant made the following statement to the Court:

I never told Dr. Polley that I was God, and I think a lot of the things he's saying on the witness stand are assumptions that he's made about my quality of thinking. Between the few times that I've seen him—I've only seen him two or three times the entire time I've been over there, and that was some months ago. I never told him that I was God. I don't believe I'm God and the other thing about it is that I did appreciate the wrongfulness of my act at Saint Elizabeths Hospital when I saw him. I don't think that—some of what he says is true, but some of it's made up. Trial Tr. at 15.

The Court made no inquiry of Defendant at this time or at any time during the proceeding about whether he wanted to rely on the defense of insanity.

At the conclusion of the testimony, the Court entered a verdict of not guilty by reason of insanity and committed Mr. Pot-

ter to Saint Elizabeths Hospital pursuant to 24 D.C.Code § 301(d).

On October 11, 1985, Mr. Potter filed a motion for unconditional release. Magistrate Dwyer held hearings on the motion on January 11 and 16, 1985. She issued an Order on September 13, 1985 denying Defendant's motion. This Court referred the unconditional release motion to the Magistrate *nunc pro tunc* to October 11, 1985. Magistrate Dwyer's Findings of Fact and Conclusions of Law shall be treated herein as Proposed Findings and Recommendations to which Defendant has filed objections.

### Analysis

Defendant's Motion for Unconditional Release does not allege that his condition has improved or that he no longer needs treatment at Saint Elizabeths. In fact, no mention is made of the state of Mr. Potter's mental health. Rather, the motion raises legal objections to the procedure of Defendant's trial.

■ Defendant first argues that he should be unconditionally released because Magistrate Dwyer failed to address him before treating the government's version of the alleged incident as a stipulation of fact. As authority, Defendant cites Rule 11 of the Federal Rules of Criminal Procedure and *United States v. Brown*, 428 F.2d 1100 (D.C.Cir.1970). Neither authority supports his proposition. Fed.R.Crim.P. 11 requires the Court to address the defendant personally before accepting a plea of guilty or nolo contendere. The Court in *Brown* held Rule 11 inapplicable, but required the trial judge "in the limited circumstances of (that) case" to personally address the defendant. In *Brown*, the defendant stipulated to the facts of the case against him and plead not guilty by reason of insanity. He was, however, convicted of the charges. It was this conviction that made *Brown* analogous to the situation described in Rule 11; Brown's stipulation to the facts of the case amounted to a plea of guilty. Such is not the case here where Defendant was found not guilty after an

uncontested presentation of the insanity defense.

■ It is Defendant's second argument that convinces the Court to grant him relief; Mr. Potter contends that he was automatically committed to the hospital without *personally* having asserted the insanity defense as required by 24 D.C. Code § 301(d). Magistrate Dwyer relied on the following facts to determine that the defense was not imposed on Mr. Potter: he did not specifically object to the defense at trial or during his Bolton hearing; Dr. Polley had discussed his option with him before trial and he indicated a desire to pursue it; Mr. Potter had told his attorney that he wanted to avoid any possibility of going to jail.

Although the above evidence taken alone may indicate a desire on Defendant's part to plead not guilty by reason of insanity, there is other information in the record that belies this conclusion. Throughout Mr. Potter's hospital records are statements that he did not believe himself to be mentally ill. This fact is confirmed by his affidavit of October 11, 1984 in which he states that he did not believe at the time of the incident or the time of the affidavit that he was suffering from mental illness. At trial, Defendant sought to interrupt the only witness called on his behalf and later stated to the Court that the doctor was making up parts of his testimony and that he (Defendant) did appreciate the wrongfulness of his act. Beside these facts, it is also relevant that no written notice of intent to raise the insanity defense was filed in this matter as required by 24 D.C. Code § 301(j).

In *United States v. Henry*, 600 F.2d 924 (D.C.Cir.1979), the Court wrote in a situation similar to this one:

> Where, as here, there is evidence that the Government's focus was not on convicting a mentally ill defendant, but rather on committing him in the wake of an insanity acquittal, Section 301's summary procedures will not be available unless counsel and the court can meet the heavy burden of ensuring that the defendant personally, as distinguished from his attorney, fully understands the proceed-

ings against him and actually raises the insanity defense.

*Id.* at 929. In light of the above evidence, it is impossible for the Court to meet this heavy burden. This does not mean, however, that Mr. Potter must be immediately released. Such a result may not be in the best interests of Defendant or society. Instead, this Court shall allow the government 30 days from the date of the Order in this case to commence civil commitment procedures against Defendant. If the government determines that civil commitment is not appropriate, Mr. Potter shall be released at the end of the 30 day period.

An appropriate Order accompanies this Memorandum.

## ORDER

Upon consideration of Magistrate Jean F. Dwyer's Proposed Findings and Recommendations in this case, Acquittee's Objections thereto and the entire record in this matter, it is by the Court this 8th day of April, 1986,

ORDERED, that unless the government commences civil commitment procedures against Defendant within thirty (30) days from the date of this Order, Defendant shall be released from Saint Elizabeths Hospital.